UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

CIVIL ACTION: 03-CV-12314-WGY

**Barbara C. Johnson, Esq.**
Plaintiff

v.

**Board of Bar Overseers of Massachusetts,
M. Ellen Carpenter, Esq.**, in her individual and professional capacities,
  including her capacity as Chair of the Board of Bar Overseers,
**Herbert P. Phillips, Esq.**, in his individual and professional capacities,
**Office of Bar Counsel,
Daniel Crane, Esq.**, in his individual and professional capacities,
**Commonwealth of Massachusetts,**
Defendants

---

## PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT AND SUPPORTING MEMORANDUM
### (with Affidavit and Certificate of Service)

Now comes Plaintiff Barbara C. Johnson ["Johnson"], of Massachusetts and submits this opposition and memorandum in support of her opposition to Defendants' motion to dismiss Johnson's amended complaint. A supporting affidavit is included at the bottom of this opposition.

## INTRODUCTION

Defendants' allegations in both the State disciplinary proceeding and their motion to dismiss the instant case are generalized and conclusory, i.e., Defendants do not identify any particular facts. Their broad brush of facts does paint, however, *in toto*, a picture that does not reflect the underlying actual facts of either case. And these two cases **are** different, despite the assertion by the defendants to the contrary.

There is, indeed, a pending quasi-administrative State delicensing proceeding. No final recommendation or judgment or order has issued in that case. And Johnson does not ask this court to vacate, modify, or alter any of the interlocutory rulings, decisions, or orders that have emanated

1

in that State case.

Defendants base their motion on the traditional Younger\[1]/ abstention doctrine arguments. That reliance is misplaced. "[T]he equitable abstention doctrine does not deprive the federal court of jurisdiction; rather, it is a judicially imposed self-restraint based on principles of equity, comity, and federalism." Brindley v. McCullen, 61 F.3d 507, 507 (6th Cir. 1995) (remanded to stay proceedings),\[2]/ citing Younger v. Harris, 401 U.S. at 43-44. "Comity is not a rule of law, but one of practice, convenience, and expediency." Mast, Foos & Co. v. Stover Manufacturing Co., 177 U.S. 458, 488 (1900). "Comity persuades; but does not command." Id.

Further, the instant case is composed, with the exception of the count for defamation, of two types of causes of action: counts seeking declaratory judgments to preserve federally mandated constitutional rights and counts seeking money damages for the deprivation of Plaintiff's federal constitutional rights.\[3]\[4]/

The Board of Bar Overseers does not have the jurisdiction to interpret statutes or rules or to decide torts or civil rights claims. The BBO has only the power, one, to conclude whether in its opinion Johnson has breached an ethical rule and, two, to recommend to the Supreme Judicial

---

[1] Younger v. Harris, 401 U.S. 37 (1971).

[2] "Issuing a stay avoids the costs of refiling, allows the plaintiffs to retain their place on the court docket, and avoids placing plaintiffs in a sometimes difficult position of refiling their case before the statute of limitations expires." Brindley, 61 F.3d at 507.

[3] There is no requirement of exhaustion of remedies before pursuing a §1983 claim, Patsy v. Board of Regents, 457 U.S. 496, 500, 516 (1982). Kercado-Melendez v. Aponte-Roque, 829 F.2d 255, *passim* (1st Cir. 1987) (Patsy rule controls).

[4] Johnson had readied two almost-identical complaints seeking declaratory judgments and relief under §1983: one for the Massachusetts Supreme Judicial Court ["SJC"], of which the Office of Bar Counsel ["OBC"] and Board of Bar Overseers ["BBO"] are administrative or regulatory arms, and one for the U.S. District Court ["USDC"]. She did this in anticipation of an immediate dismissal by the SJC. Defendants did not need to write a motion to dismiss. Literally within an hour of a single justice (Spina, J.) reading it, Johnson's complaint at the SJC was dismissed. That happened but a half-hour before the instant case was filed in the USDC. Before a responsive pleading was filed or served, Johnson filed an Amended Complaint, of which Assistant Attorney-General Hitt consented to accept service.

Court that Johnson be punished in some way for that breach.

Even if this court were to use its discretion to dismiss or stay Johnson's claims for declaratory judgments [Doran v. Salem Inn, infra; Wooley v. Maynard, infra], it has the authority to sever the money-damage issues from the requests for equitable relief. Brindley, 61 F.3d at 507.

"[O]rdinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the long-standing policy limiting injunctions was designed to avoid."\[5]/ Samuels v. Mackell, 401 U.S. 66, 72 (1971). However, even when a Younger abstention is proper, a district court has no discretion to dismiss claims for monetary relief that cannot be redressed in the pending state action. Deakins v. Monaghan, 484 U.S. 193, 202 (1988); Lewis v. Beddingfield, 20 F.3d 123, 125 (5th Cir. 1994). Where a damages action does not lie within a federal court's discretion and abstention is appropriate, the damages action requires a federal court to retain its jurisdiction by entering a stay to *postpone* adjudication of the dispute rather than to dismiss the case altogether. Quackenbush v. Allstate Ins. Co., --- U.S. ----, 116 S. Ct. 1712, 1722 (1996). Thus "we have permitted federal courts applying abstention principles in damages actions to enter a stay, but we have not permitted them to dismiss the action altogether." Id. at 1728.\[6]/

That declaratory relief is improper when a prosecution involving a challenged statute is

---

[5] The Anti-Injunction Act, 28 U.S.C. §2283, does not apply to §1983 claims. Mitchum v. Foster, 407 U.S. 225, 242-43 (1972). *See also* Zalman v. Armstrong, 802 F.2d 199 (6th Cir. 1986). It is also well-settled that the exhaustion requirement does not apply to any suit brought under §1983. Gibson, at 581 (Marshall, J., with whom Brennan joins, concurring), citing McNeese v. Board of Education, 373 U.S. 668, 671-672 (1963); Houghton v. Shafer, 392 U.S. 639 (1968); King v. Smith, 392 U.S. 309, 312 n. 4 (1968); Damico v. California, 389 U.S. 415 (1967). 1696.

[6] Johnson would not have to contend with a statute of limitations defense and various tolling arguments upon the filing of a new federal lawsuit. A stay will protect Johnson's claims from the statute of limitations. *See* Deakins v. Monaghan, 484 U.S. 193, 202-03 & n.7 (1988). American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts § 1371 Commentary, at 285 (1969) (recommending entry of a stay when the state-court action could prove "ineffective").

3

pending in state court at the time the federal suit is initiated [Younger, at 36] is irrelevant here, for Johnson is neither being charged under a statute nor challenging a statute in the OBC/BBO action against her.

Where **(a)** no statute is being challenged in the State OBC/BBO action against Johnson and **(b)** no State criminal prosecution is pending against Johnson, she need not demonstrate the existence of the Younger factors to justify the issuance of a declaratory judgment.

However, a preliminary injunction may issue to preserve the *status quo* while this court considers whether to grant declaratory relief [*see* Doran v. Salem Inn, 422 U.S. 922 (1975)], and if this court does grant declaratory relief, it may also issue a permanent injunction if necessary to protect Johnson's constitutional rights. *See* Wooley v. Maynard, 430 U.S. 705 (1977).

## TEST OF APPLICABILITY OF YOUNGER DOCTRINE

The test of the applicability of the Younger doctrine in criminal contexts has changed ever so slightly from case to case over the quarter-century since the Younger opinion was published.[7]

The test supplied in the defendants' motion to dismiss was composed of the three factors reflected in the three headings below. Although the three factors as iterated by the defendants were derived from Bettencourt v. Board of Registration in Medicine, 904 F.2d 772 (1st Cir. 1990), the factors also do **not** appear exactly in Bettencourt as they are written in the defendants' motion. That is, the defendants wrote:

> (1) the state proceedings are judicial in nature; (2) the proceedings implicate important state interests; (3) they provide an adequate opportunity to raise federal claims.

Defs. Mem. at 4. The distortion took place when the defendants identified the third factor: Instead of the words "raise federal claims," the court in Bettencourt wrote "raise federal constitutional challenges." One would not expect interlocutory review for "federal claims," but might for "fed-

---

[7] The test does not appear in Younger itself.

4

eral constitutional challenges," as noted in <u>Gibson v. Berryhill</u>, 411 U.S. 564 (1973) and in <u>Brooks v. New Hampshire Supreme Court</u>, 80 F.3d 633, 639 (1st Cir. 1996).

(1) <u>The State Proceedings Are Judicial in Nature</u>[8]/

Johnson is not being prosecuted by the State for a criminal matter; i.e., there is **no** State criminal proceeding pending against Johnson, and there never was. Johnson is not being prosecuted for violating any statute. Johnson is being prosecuted by the OBC/BBO in a disciplinary action for the alleged breach of ethical rules. While the United States Supreme Court has deemed such actions to be quasicriminal [<u>In re Ruffalo</u>, 390 U.S. 544, 551 (1968)], the Massachusetts Supreme Judicial Court has deemed them civil. <u>Boston Bar Ass'n v. Greenhood</u>, 168 Mass. 169, 183 (1897) (disciplinary proceedings are on the common-law side of the court). And until the BBO and OBC were established in 1974, bar disciplinary proceedings were heard by a judge or jury.[9]/ After 1974, bar disciplinary proceedings in Massachusetts became administrative in nature.

For instance, to be "judicial in nature," proceedings must involve "'[a] judicial inquiry [that] investigates, declares and enforces liabilities as they stand on ***present or past facts*** and under ***laws*** supposed already to exist.'" <u>Bettencourt</u> at 778 (emphasis supplied). If that statement is true, then the proceeding at the BBO **cannot** be judicial in nature. If it were, Johnson would not have been precluded from introducing as evidence the merits of the underlying case out of which the OBC alleges wrongdoing arose. <u>Compl.</u> ¶150, quoting a BBO order reading, "The merits of the

---

[8] The words "state criminal proceedings" (<u>not</u> "state proceedings") usually appear in the first factor. In <u>Bettencourt</u>, the word "criminal" appears to have been removed so as to discuss the test in a noncriminal context.

[9] When in 1936, a judge rather than a jury decided a bar disciplinary case, a convoluted explanation for the exception was provided. <u>See</u> <u>Matter of Mayberry</u>, 295 Mass. 155, 166, 168 (1936). There the Court drew the inference that Mayberry bribed or attempted to bribe through his agent(s) one or more jurors in 7 of 19 cases tried by Mayberry in a 2-year period. "There was no direct evidence of [Mayberry's] participation in unlawful practices." Ultimately the Court found that the respondent was not prejudiced by the findings of a single justice rather than by jurors because the "... jurors [were] of low grade in respect to intelligence and character."

underlying cases in Counts One and Two are irrelevant to this proceeding and testimony on these issues is excluded." In those merits are Johnson's defenses to the OBC's false allegations.

Moreover, there appear to be no cases in which Massachusetts has declared a bar disciplinary proceeding to be "judicial in nature." The most the SJC has declared is, a bar disciplinary process is "an <u>administrative process</u> under the authority of the justices of the Supreme Judicial Court." Matter of Jones, 425 Mass. 1005, 1008 (1997) (emphasis supplied)\[10]/. The Massachusetts SJC had had 15 years to adopt – but did <u>not</u> adopt -- the holding of the United States Supreme Court that attorney disciplinary proceedings are judicial proceedings for purposes of <u>Younger</u> abstention. Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423, 433-434 (1982). *But see* id. at 429, where the USSC reminds the reader of the Third Circuit's determination that disciplinary proceedings are "administrative, 'nonadjudicative' proceedings."

---

### NOTE

The defendants' counsel, Assistant Attorney-General Hitt,
altered the statement allegedly quoted from the Middlesex case [Defs. Mem. at 4].

**THE TRUE STATEMENT ALLEGEDLY QUOTED**

*It is clear beyond doubt that the New Jersey Supreme Court
considers its bar disciplinary proceedings as "judicial in nature."
Id. at 433-434.*

**ASSISTANT A-G HITT'S FALSIFIED QUOTATION**

*It is clear beyond doubt that **[Massachusetts Supreme Judicial]** Court
considers its bar disciplinary proceedings as "judicial in nature."
Id. at 433.*

---

Johnson contends that Massachusetts has held fast to the notion that bar disciplinary proceedings are administrative proceedings, for to do otherwise, the SJC could not allow the BBO to

---

[10] In Jones, at 1008, the Court reiterated that "[b]ar discipline cases are not criminal in nature."

6

operate as a quasi-administrative body under the Administrative Practice Act, which allows the BBO to avoid using the rules of evidence.\[11]/ The change AAG Hitt made *is* significant. The Massachusetts SJC does not want to consider its bar disciplinary proceedings as "judicial in nature," for it would have to change how the BBO is doing business.

### (2) The Proceedings Implicate Important State Interests

In discussing the second factor, AAG Hitt cites only to Middlesex\[12]/ [Defs. Mem. at 4-5] and once again [Defs. Mem., at 5, lines 1-3], attempts to mislead this court into believing that Massachusetts' state interests were discussed in that opinion. He did this by again substituting the name "Massachusetts" for the "State of New Jersey." Massachusetts' state interests were *not* discussed in that opinion.

Johnson suggests that dicta in Younger be what this court should follow: "The offense to state interests is likely to be less in a civil proceeding. A State's decision to classify conduct as criminal provides some indication of the importance it has ascribed to prompt and unencumbered enforcement of its law." Younger, at 55 n. 2 (Stewart, J., concurring, with whom Harlan, J., joined). Given that the Commonwealth has steadfastly asserted that the disciplinary hearing is not criminal, and merely administrative, one in which witnesses and other evidence was precluded by *pretrial* orders, the state interest is minimal.

---

[11] In the year prior to establishing the OBC and BBO, the SJC held that disbarment proceedings were civil in nature and the "'rules of evidence applicable to civil trials . . . (are) rightly enforced.'" Matter of Troy, 364 Mass. 15, 24-25 (1973), quoting Matter of Ulmer, 268 Mass. 373, 392 (1929) and Mayberry, *supra,* at 166-167; and Collins v. Godfrey, 324 Mass. 574, 577-578.

[12] Hitt's page reference is also partially inaccurate. He cites to pages 434-435. The quote is on 434. Other page references in his brief are also wrong. The cumulative misrepresentations from miniscule to humungous are rankling.

7

### (3) They Provide an Adequate Opportunity to Raise Federal Constitutional Challenges\[13]/

As written in note 4, *supra,* Johnson has already sought and been denied consideration of her State and federal constitutional challenges.

Prior to filing her Complaint seeking declaratory judgments by the SJC, Johnson had already tried -- unsuccessfully -- to raise issues of law in the OBC/BBO action. One particular significant matter – with embedded federal constitutional issues -- arose during the investigatory stage of the OBC/BBO action – that is, while the case was open but prior to a Petition for Discipline being served.\[14]/ Bar Counsel claimed that materials from a custody and paternity suit were confidential and that Johnson should not have published (on her website) the Complaint for Modification she wrote in that case. Prior to 31 March 1998, when the amended §13 became effective, pleadings filed under M.G.L. c. 209C were presumptively impounded. After that date, c. 209C pleadings were presumptively open. Johnson wrote her pleading in the Spring of 2000.\[15]/

When Bar Counsel intervened in the family-court case and the lower-court judge went

---

[13] Johnson noted Hitt's changing of the words "federal constitutional challenge" to "federal claims" on page 4 of this brief.

[14] On or around 6 March 2003, Johnson filed, pursuant to M.G.L. c. 211 §3, a Complaint in the Nature of a Petition for a Writ of Certiorari and to Invoke the General Superintendence of the Court. It was concerned with the issue of retroactivity of M.G.L. c. 209C §13 in the case underlying Count I of the Petition for Discipline. Compl. ¶154. Bar Counsel Daniel Crane had intervened in the Bristol County custody and paternity case, the Linnehan case, and sought records he pled were confidential under M.G.L. c. 209C §13 prior to **and** after the amendment becoming effective on 31 March 1998. Compl. ¶155. The Massachusetts SJC was unwilling to review the issue.

[15] To write a Complaint for Modification, four things must be included: **(1)** the order to be modified, **(2)** the circumstances underpinning that order, **(3)** new and substantial changes in circumstances, and **(4)** the proposed new order. Because Johnson's 2000 pleading contained some pre-March-1998 material, Bar Counsel said Johnson violated the confidentiality rule by publishing the 2000 pleading (the substance of Bar Counsel's Count I against Johnson). Johnson argued that §13, as amended, implicated procedural, not substantive, due process, so it is to be applied retroactively as well as prospectively. Compl. ¶162. Because Bar Counsel contended that c. 209C §13 looks only forward, not backward, he brought the charges against Johnson for uploading allegedly presumptively impounded materials to her website. Compl. ¶163 and Addendum to the Complaint. That is the nub of the dispute in Count I of the Petition for Discipline.

along with Bar Counsel's interpretation of the amended §13, Johnson sought judicial review at the single justice session of the SJC. That court refused to consider Johnson's petition and thus refused to consider and determine Johnson's constitutional challenges (as well as those of her client).

After the so-called trial at the BBO "aborted" on 2 December 2003, Johnson moved to have the BBO seek judicial review by the SJC of the BBO and the lower-court's interpretation of amended §13 .\[16]/ [Compl. ¶161]. That motion, too, was denied.

If that issue had been interpreted, Count I of the BBO petition would have crumbled.\[17]/

After Bar Counsel brought the Petition for Discipline, Johnson moved the BBO to report the issue interlocutorily to the SJC, for the BBO was without jurisdiction and/or authority to interpret the law, to wit, to decide whether the amendment had retroactive or prospective effect.

The issue of whether a plaintiff, such as Johnson, has or will have an adequate opportunity to raise federal constitutional challenges is a critical factor in determining whether the Younger abstention doctrine is fatal to Johnson's federal action. It was critical in Gibson v. Berryhill, 411 U.S. (Ala.) 564 (1973), Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423 (1982), and Brooks v. New Hampshire Supreme Court, 80 F.3d 633 (1st Cir. 1996), and a little less so in Bettencourt v. Board of Registration in Medicine, 904 F.2d 772 (1st Cir. 1990). Gibson was the only one of the four cases which overcame the Younger abstention doc-

---

[16] It was on 8 December 2003, a week after SHO Phillips ordered the public out of the hearing room but a day before Johnson filed a motion for a rehearing pursuant to Board Rule 3.59, when Johnson sought the BBO to report the issue of whether M.G.L. 209C, §13, as amended, effective March 31, 1998, has retroactive or prospective effect. That motion, dated 12/8/03, appears near the end of the addendum to the Amended Complaint.

[17] Count II was a *de minimus* fee dispute. Count III (alleging that Johnson's being found in contempt of a non-existent order in 1995 and being jailed for 24 hours in 1998 by the same judge was proof that Johnson had violated the rules of conduct). Given the facts of those cases, those counts are very weak and would unlikely support a recommendation of disbarment, which is what Johnson has been led to believe the OBC/BBO are seeking.

9

trine and was granted an injunction, Middlesex almost did, but the New Jersey high court changed its mind midstream, so Younger ultimately caused the case to be dismissed.

Case summaries are appropriate here.

- Bettencourt was a physician seeking reinstatement of his medical license. His petition for review by the Massachusetts SJC was pending and provided him with an adequate opportunity to raise federal constitutional claims, so Younger applied.

  "[Bettencourt] waited until **after** the Board had rendered its decision, and after his review petition to the SJC had been filed, before he brought this federal action. The district court is not being asked to defer to future or contemporaneous unconstitutional conduct. [Bettencourt's] case is for the alleged past denial of due process and equal protection, a claim which the SJC, having jurisdiction, is equally competent to entertain." Bettencourt, at 780 (emphasis supplied).

  In sum, Bettencourt waited too long. The State court had already had taken the matter under consideration.

- Gibson appears to have been an optometrist. Beyond his name being in the caption, his name does not appear elsewhere in the case. The case was essentially between groups of optometrists. Judicial bias was recognized as a basis for derailing the Younger abstention. Brooks, at 639.

  Gibson "sue[d] **before** the Board's hearings occurred. The district court then would have evaluated plaintiff's allegations of bias on the part of the board members." Bettencourt, at 780 (emphasis supplied).

- In Middlesex, Hinds, the executive director of the National Conference of Black Lawyers [id. at 427], constitutionally challenged the proceedings. Id., at 430-431. Although he was defeated by the Younger abstention doctrine in federal District Court, "the Third Circuit reversed on the ground that the state bar disciplinary proceedings did not provide a meaningful opportunity to adjudicate constitutional claims." Id. at 429. The reason: disciplinary proceedings are "administrative, 'nonadjudicative' proceedings" [id]; they are "analogous to the preindictment stage of a criminal proceeding." Id. The proceedings in Middlesex were "unlike the state judicial proceedings to which the federal courts usually defer." Id.

  While the petition for rehearing brought by Hinds' opponent was pending at the Third Circuit Court of Appeals, the court learned that the New Jersey Supreme Court would directly consider Hinds' constitutional challenges and consider whether they would change the (N.J.) Supreme Court rules. Notwithstanding the new rule providing for interlocutory review, "the Third Circuit declined to alter its original decision." Id.

  The United States Supreme Court, however, disagreed with the Third Circuit. Applying Younger, the USSC reversed on the grounds that Hinds now had available an avenue in state court for an interlocutory appeal in which he could raise his constitutional challenge to the proceedings.

10

- Brooks was the lover of his attorney, who bore his child. When the attorney sought to dismiss Brooks' paternity suit, he complained to the Professional Conduct Committee. He filed in both State and federal courts. The First Circuit said he did not have enough proof of judicial bias to satisfy the third factor of the test to overcome Younger.

Johnson **(a)** like Gibson, sued before the Board's hearings occurred; **(b)** unlike Hinds, tried five or six different ways to exercise her constitutional rights at the BBO and in the Massachusetts SJC, **(c)** unlike Hinds, has not been fortunate to have a new avenue of interlocutory appeal made available to her, **(d)** unlike Brooks, Johnson's allegations of judicial impartiality are anchored to specific facts, and **(e)** like Gibson, is facing not only a "Board that might have 'preconceived opinions' with regard to [her case] before them," but also a judiciary that has a possible pecuniary interest should judicial immunity be abolished.

## IN EXCEPTIONAL CIRCUMSTANCES, YOUNGER DOES NOT APPLY

The Younger doctrine does not apply "in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown." Perez v. Ledesma, 401 U.S 82, 85 (1971).

> In unusual circumstances, a plaintiff may secure relief in the federal courts -- even though doing so would interfere with ongoing state-initiated proceedings -- by demonstrating "bad faith, harassment, or any other unusual circumstance that would call for equitable relief." . . . The Supreme found one of these "unusual circumstances," permitting federal-court interference, to have occurred when a state administrative board was so constituted as to be fundamentally biased. See Gibson v. Berryhill, 411 U.S. 564, 577 (1972).\[18]/

Bettencourt, at 780, quoting Younger at 54.

The court in Bettencourt also remarked at that juncture that Bettencourt did not contend that any unusual circumstance was present. "Having failed to raise the issue, [Bettencourt] has waived it." Id., at 781. Unlike Bettencourt, Johnson raised all her issues. And unlike Bettencourt,

---

[18] The case was decided in 1973, not 1972 as asserted in Bettencourt.

11

Johnson in her Complaint\[19]/ is not "asking the district court to interfere with proceedings now in progress before a state judicial tribunal as to which claims of irregularity by the Board do not apply." Bettencourt, at 781. Bettencourt is thus inapposite to the instant case.

The defendants failed to refer to Gibson, where Gibson pled (unlike Bettencourt) and the District Court found the administrative process to be "so defective and inadequate as to deprive the plaintiffs of due process of law" that neither the Younger nor the exhaustion doctrine forbade a federal injunction. Gibson, 411 U.S. at 570. There, in Gibson, the Court noted,

> "Such a possibility of bias was found to arise in the present case from a number of factors. First, was the fact that the Board, which acts as both prosecutor and judge in delicensing proceedings, had previously brought suit against the plaintiffs on virtually identical charges in the state courts. This the District Court took to indicate that members of the Board might have "preconceived opinions" with regard to the cases pending before them."

Gibson, at 571. It was in this context that the Court found that "neither statute nor case law precluded [the District Court]" from adjudicating the issues before it and from issuing the injunction if its decision on the merits was correct. Gibson, at 572.

The First Circuit Court opinion in Brooks v. New Hampshire Supreme Court, 80 F.3d 633 (1st Cir. 1996), was as original as anticipated when Justice Selya is the author. He reiterated an element seen in several other cases and one element not seen or required elsewhere: **(1)** the need to seek recusal of "allegedly biased judges" [Brooks, at 640] and **(2)** the need to make startling allegations of general institutional bias, for instance, to plead evidence of "a potential conflict of interest . . . or a pecuniary stake in the outcome of the litigation." Id. (internal cites omitted).\[20]/

---

[19] In her Complaint, Johnson is not asking this court to interfere with the State proceedings. It is true, however, that as a result of the defendants' deficient memorandum in support of their motion to dismiss, Johnson has reverted to seeking a temporary injunction. An injunction simply appears to be more appropriate than ever.

[20] For most plaintiffs, definitive proof of such wrongdoing would be virtually impossible to gather . . . and would cost the government millions of dollars and the appointment of special prosecutors.

12

Nevertheless, Johnson's evidence comes close if not sufficient to jump the almost insurmountable hurdles placed on the track by the court in Brooks.

**One.** Unlike Brooks, Johnson did "employ available procedures for recusal of allegedly biased judges" [Brooks, at 640 (internal cites omitted)]:

(a) first Johnson moved for a jury trial [Compl. ¶¶48-55, 58-61, Addendum, Papers 20, 25, 28, 35, 43, 45-46, 53, 78, including Johnson's motions, OBC oppositions, BBO orders and letters, all from 6/21/03 through 9/16/03]

(b) Johnson moved to preclude Defendant Chair Carpenter from sitting on any committee or deciding any motion in the actions [Compl. ¶69, Addendum, Papers 50, 74 and 75],

(c) Johnson moved to recuse Defendant Special Hearing Officer ["SHO"] Phillips [Compl. ¶146, Addendum, Paper unnumbered but filed and denied 12/01/03],

(d) Johnson moved to remove the Assistant Bar Counsel as prosecutor [Compl. ¶146, Addendum, Paper 95, filed 11/5/03 and denied 11/18/03],

(e) Johnson requested that the Full Board (not the Chair alone) issue subpoenas requiring attendance and testimony at trial [Compl. ¶37, Paper 90 (11/04/03); denied], and

(f) Johnson moved for a conference with the 12-member Board [Compl. ¶194; denied on 12/12/03 by Phillips].

Brooks' failure to employ such procedures as seeking recusal was fatal, according to Judge Selya: "For this reason alone, his claim must fail," Justice Selya said about Brooks. Brooks, at 640, citing for that proposition Middlesex, 457 U.S. at 435;[21]/ Bettencourt, 904 F.2d at 780;[22]/ Standard Alaska Prod. Co. v. Schaible, 874 F.2d 624, 629 (9th Cir. 1989), *cert. denied*, 495 U.S. 904 (1990) (bias exception inapplicable when plaintiffs fail to utilize state tribunal's disqualification procedures).

---

[21] The words "bias" or "recuse" do not appear in the Middlesex opinion, making the reliance for this proposition somewhat curious.

[22] For this proposition, the court in Bettencourt cites Standard Alaska, *supra*, and Peterson v. Sheran, 635 F.2d 1335, 1341 (8th Cir. 1980) (similar).

13

AND SUPPORTING MEMORANDUM
(with Affidavit and Certificate of Service)

Case 1:03-cv-12314-WGY    Document 9    Filed 01/22/2004    Page 14 of 19

**Two.** "To implicate due process, claims of general institutional bias must be harnessed to a further showing." Brooks, at 640. Johnson's further showing is her crusade for court reform and the abolition of judicial and quasijudicial immunity. [Compl. ¶111(a-d)]. In fact, approximately a third of the OBC's trial exhibits consisted of pleadings uploaded to Johnson's website, falseallegations.com, where she not only exercises her First Amendment rights to free speech and political expression but also fulfills her obligation to make public the unscrupulousness of certain courts. [Compl. ¶45-47, 128, 131-133].

**Three.** And unlike Brooks, Johnson included in the Complaint addendum, documentary evidence of almost each and every allegation of deficient procedures and bias and the predisposition and follow-through of the BBO and the Chair not to uphold their own policies and rules. See Brooks, at 640.

In sharp contrast with the demands the court made on Brooks, the court made light of Brooks' complaint that the New Hampshire Supreme Court "agree[d] to entertain his petition, but only *in camera*" [Brooks, at 636] and "that the NHSC [was going to] only hear oral argument on his petition behind closed doors." Brooks, at 640. Brooks' complaint, according to the Appeals Court, was but a "frenzied brandishing of a cardboard sword" [Brooks, at 639] and the "Justices' interest (if any) in maintaining the privacy of attorney disciplinary proceedings appears to be purely Platonic." Brooks, at 640.\[23]/

In contrast, although -- being somewhat of a crusader for full disclosure, exposure, and accountability -- Johnson found Brooks' plight somewhat sympathetic, Johnson pled specific, concrete facts – of which there is documentary evidence -- as to why a closed trial would be spooky:

---

[23] That the NHSC justices "retain[ed] a strong interest in preserving the expectations of confidentiality created by the former regime" [Brooks, at 639 n. 6] . . . and did not dissent to amendments liberalizing the confidentiality rule . . . and were "not wed to secrecy" [Brooks, at 640 n. 9] was relegated to two footnotes.

14

- At a prehearing conference on 17 November 2003, Phillips told the stenographer repeatedly that the proceeding was "off the record" when Johnson spoke [Compl. ¶134];
- on 2 December 2003, two of Johnson's witnesses appeared and Phillips asked whether they were here because of Johnson's subpoenas, and when they said, Yes, Phillips excused them and told them the subpoenas were invalid and they could leave [Compl. ¶179]
- during Johnson's Opening Statement, the Assistant Bar Counsel falsely claimed that a pre-existing protective order of 10 September 2003 precluded Johnson from mentioning names of witnesses, including a complainant [Compl. ¶182];
- Phillips then ordered the public audience from the hearing room on the first day of the scheduled trial [Compl. ¶186].

This behavior was not perceived by Johnson as being "Platonic," as the court in Brooks claimed the Justices' behavior was. Brooks, at 640. Without a complete and accurate stenographic record, without witnesses, without the public in attendance, Johnson was vulnerable to being scathed by whatever falsity the defendants chose to fabricate . . . as had been done in the Bar Counsel's Petition for Discipline.

## BAD FAITH

Defendants also seek dismissal on the grounds that Johnson failed to plead bad faith sufficiently. They cite [Defs. Mem., at 6] Bettencourt v. Board of Registration in Medicine, 904 F.2d 772,779 (1st Cir. 1990), for that proposition, and Judge v. City of Lowell, 160 F.3d 67 (1st Cir. 1998) for the proposition that Johnson had to plead her claims of bad faith or illegal motive with more specific and nonconclusory facts from which such a motive may reasonably be inferred, not merely by generalized asseveration alone." Judge, 160 F.3d at 72.

Johnson disagrees. Paragraphs 41-47 of her Complaint are not the only paragraphs that show bad faith and illegal motive on the part of the defendants. Johnson pled as follows:

- in ¶ 92, Johnson referred to her political motivation ("a motion to enjoin Johnson's political and free speech");
- in ¶¶ 93(c-f), Johnson impliedly referred to the defendants' bad faith in petitioning against her. In those subparagraphs, Johnson wrote that the defendants "failed to state the authority giving the Bar the right to censor Johnson's website and stifle her political

15

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS Case 1:03-cv-12037-NG Document 9 Filed 01/22/2004 Page 16 of 19
AND SUPPORTING MEMORANDUM
(with Affidavit and Certificate of Service)

speech and free expression, failed to state the scope of the website censorship sought, failed to state how the censorship was to be implemented, failed to state the authority giving the Bar permission to override Johnson's First Amendment rights";

- in ¶ 111, Johnson referred again to the defendants' desire to stifle "Johnson's views on the need for judicial accountability and the need for court reform are well-known to the courts";

- in footnote 18 on page 18, Johnson commented that she "believes the award was to smite Johnson's crusade to abolish judicial immunity";

- in ¶ 116, Johnson pleaded, "The motive of Carpenter and likely persons unidentified was to preclude Johnson from showing that the lower-court orders were not only "bad," they were based on fabricated facts and findings and on, literally, a materially altered document [*see* Figures 2(a-e)]";

- in ¶ 151, Johnson wrote, "The merits of the underlying case of Count I constituted Johnson's defense that public scrutiny is necessary to guard against unscrupulous judicial proceedings and that it was because of unscrupulous judicial proceedings …";

- in ¶¶ 234 and 235, Johnson wrote, "The BBO and the Bar Counsel disagree with Johnson that she has a right to pierce immunities not made into law by our legislatures. The BBO and the Bar Counsel disagree with Johnson that article V of the Mass. Declaration of Rights makes all magistrates and officers of all three branches of government accountable to all the people, including Johnson, at all times."

In determining whether the state disciplinary action was commenced in bad faith or was intended to harass Johnson, the court must look at three factors:

(1) whether it was frivolous or undertaken with no reasonably objective hope of success; (2) whether it was motivated by defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights; and (3) whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions.

Weitzel v. Division of Occupational and Professional Licensing of the Department of Commerce of the State of Utah, D-Cr. No. 99-CV-670-K (10th Cir. 2001) (Tacha, C.J.), slip op. 7.

**Element 1.** Certainly the OBC's case will be successful. Given the taint of the administrative process employed by the OBC and the BBO, "flagrantly and patently violative of express constitutional prohibitions" [Younger, 401 U.S. at 53], the OBC is guaranteed success. The OBC and BBO are figuratively Siamese twins. They share the same executive officers (the SJC). The

16

SJC appoints, approves, and/or hires the directors, staff members, counsel (both Bar Counsel and the General Counsel and the assortment of assistants to both the Bar and General Counsel). The OBC and BBO share office space, internal staircase, receptionist, telephone, and restroom keys. They give each other instructions, and as prosecutor and adjudicators, they indulge in *ex parte* communication at will.

**Element 2.** During Johnson's gubernatorial campaign, she ran on a platform advocating court reform, particularly of the family-law courts, and judicial accountability, to be accomplished by abolishing judicial immunity and the derivative quasijudicial immunity. The OBC/BBO and the judiciary are unhappy with Johnson's activism.

**Element 3.** The entire OBC process has gone on for years against Johnson. There is no other way to describe it except as being intense and harassing and threatening.

In so doing, Johnson has been caused irreparable injury. *See* Younger, 401 U.S. at 43. She will be defending herself to both the public and the "legal" community for years henceforth.

## EXTRANEOUS ISSUE RAISED BY DEFENSE COUNSEL IN MEMORANDUM

Defense counsel, AAG Hitt, raised in his supporting memorandum an extraneous issue, to wit, sanctions by the BBO. Although an alleged "trial" has been allegedly held, the parties have not yet submitted proposed findings of fact and rulings of law. No recommendation for sanction has been made, and sanctions have, therefore, not been imposed. Neither has Johnson sought this court to modify or vacate any sanctions. Therefore Hitt's discussion regarding sanctions and his quotations from the Matter of Foley, 439 Mass. 324 (2003) and Matter of Kenney, 399 Mass. 431 (1987) are superfluous.

Brotherhood of Locomotive Engineers v. Massachusetts Commission Against Discrimination, 695 F. Supp. 1321 (D. Mass. 1988) is a case in which the issue of preemption was paramount. The district court motion judge was less concerned with the Younger abstention doctrine than he

17

was with the issue of whether the plaintiff would "have a full and fair opportunity to litigate its constitutional concerns in the state proceedings." Id. at 1323. Aware that the MCAD procedures were judicial in nature and that the Commission was "fully capable of resolving constitutional issues, including preemption" [id. at 1322-1323], the court concluded that the Brotherhood would have that opportunity. In that regard, the instant case is unlike Brotherhood.

## CONCLUSION

As Justice Douglas wrote, dissenting, in Younger:

> The eternal temptation, of course, has been to arrest the speaker rather than to correct the conditions about which he complains. I see no reason why these [speakers] should be made to walk the treacherous ground of these statutes. They, like other citizens, need the umbrella of the First Amendment as they study, analyze, discuss, and debate the troubles of these days. When criminal prosecutions can be leveled against them because they express unpopular views, the society of the dialogue is in danger.

Younger, at 65.

Johnson finds herself walking the treacherous ground under the penumbra of the OBC/BBO's power to prosecute and judge her in her capacity as an attorney who believes she, like ordinary citizens, is protected by the First Amendment and entitled to express views unpopular with the judiciary or those in power in the judicial system. Calling for both court reform -- in particular, the family-law courts -- and the abolition of judicial and quasijudicial immunity, not only as a citizen and but also an attorney, Johnson found herself falsely accused of unethical conduct. Rather than "study, analyze, discuss, and debate" the problems identified by Johnson, and acknowledge that she had a professional obligation to alert those in positions of power, the OBC/BBO has instead identified on Johnson's website files which allegedly offend the professional rules of conduct. Where, with the approval of the BBO, the OBC subsequently leveled a disciplinary prosecution against Johnson because she expressed unpopular views, the society of the dialogue is in danger.

18

WHEREFORE, Plaintiff prays this court

1. deny the defendants' Motion to Dismiss,

2. grant to Plaintiff a temporary injunction against the Office of Bar Counsel and Board of Bar Overseers,

3. award Plaintiff fees for having to oppose a frivolous and bad-faith motion to dismiss, and

4. let the trial begin forthwith.

Respectfully submitted,
Plaintiff Barbara C. Johnson, pro se,

22 January 2004

Barbara C. Johnson, Esq., Pro Se
6 Appletree Lane
Andover, MA 01810-4102
978-474-0833
BBO #549972

## AFFIDAVIT OF BARBARA C. JOHNSON

I, Barbara C. Johnson, hereby swear and say that all the statements and observations I attribute to myself in the within pleading are true and accurate. Those statement to which I attribute to others as having been said to me, are also as I remember hearing them. I also hereby swear and say that I have kept all of the exhibits attached to this pleading in the ordinary course of business.
Sworn under the pains and penalties of perjury,

22 January 2004

Barbara C. Johnson, Esq., Pro Se

## CERTIFICATE OF SERVICE

I, Barbara C. Johnson, hereby certify that on 22 January 2004, I caused to be served in hand a true and accurate copy of the within pleading on opposing counsel, Assistant Attorney General John R. Hitt, Government Bureau, One Ashburton Place. Boston, MA 02108-1598.

22 January 2004

Barbara C. Johnson, Esq., Pro Se