UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

C.A. No. 03-CV-12314-WGY

**Barbara C. Johnson, Esq.**
Plaintiff

v.

**Board of Bar Overseers of Massachusetts,**
**M. Ellen Carpenter, Esq.,** in her individual and professional capacities,
   including her capacity as Chair of the Board of Bar Overseers,
**Herbert P. Phillips, Esq.,** in his individual and professional capacities,
**Office of Bar Counsel,**
**Daniel Crane, Esq.,** in his individual and professional capacities,
**Commonwealth of Massachusetts,**
Defendants
------------------------------------------------------------------------------------------

## PLAINTIFF'S OPPOSITION AND MEMORANDUM IN SUPPORT OF OPPOSITION TO FURTHER MOTION TO DISMISS
### (with Affidavit and Certificate of Service)

Now comes Plaintiff Barbara C. Johnson ["Johnson"] and submits this opposition and memorandum in support of her opposition to Defendants' Further Motion to Dismiss Johnson's Amended Verified Complaint. A supporting affidavit is included at the bottom of this opposition.

As grounds, Johnson states the seven grounds set out in her "Brief Asserting Neither Quasi-judicial Nor Quasi-prosecutorial Immunity Is Applicable" and incorporates them by reference as if set forth herein this opposition.

As an eighth ground, Johnson states that absolute immunity is not applicable to this case, for the alleged "court" of the Board of Bar Overseers is defined by the Supreme Judicial Court as an "Affiliated Entity," not as a court of the type contemplated in 1871.

As a ninth ground, Johnson states that the three natural defendants are not entitled to absolute judicial immunity for acting in quasi-judicial capacities. None performed a type of judicial function contemplated by the state and federal constitutions or statutes. None has acted in a judge-like manner, and Defendant Crane was at no time a judge or a quasi-judge.

1

8. **Absolute immunity is not applicable to this case, for the alleged "court" of the Board of Bar Overseers is an "Affiliated Entity," not a court contemplated in 1871, when the Court in *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1871), imported the doctrine of judicial immunity from the most reviled court in British history -- the Star Chamber.**

In 1871, the Court in Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347 (1871), imported the doctrine of judicial immunity from England. Until 1974, when the BBO and Office of Bar Counsel were established by the Supreme Judicial Court of Massachusetts, attorney discipline actions in Massachusetts were held in a court contemplated by Article III of Ch. 1, Sec. 1, of the Constitution of the Commonwealth of Massachusetts, or in Article III courts in the federal judicial system.

In fact, the first Massachusetts judicial-immunity case to be heard in a federal court was Randall v. Bingham, 74 U.S. (7 Wall.) 523 (1868),[1] three years before Bradley was decided. Randall was an action against a Massachusetts superior court justice for the alleged wrongful disbarment of an attorney. The Court there wrote, "[Judges] are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, **unless perhaps where the acts, in excess of jurisdiction, are done maliciously or corruptly**." Id. at 536 (emphasis supplied).[2] Significantly, at that time, in 1868, when Randall was decided, express malice was also not excused in Britain as it has been in this Republic ever since Bradley.

The holding in Randall was more defensible than that in Bradley, for Bradley allowed judges to be malicious and/or corrupt and stay in office and continue to be malicious and corrupt. Yet, any reference to article V of the Declaration of Rights of the Commonwealth of Massachusetts was overlooked in Randall.

---

[1] The year is variously given as 1868 or 1869.

[2] It appears that in the British Commonwealth, judicial immunity from charges of constitutional violations has become obsolete or has fallen into desuetude   John E. Wolfgram, "How the Judiciary Stole the Right to Petition," 31 U. West L.A. L. Rev. 14 n. 28 (Summer 2000) (emphasis supplied), citing *See The Digest of British, Commonwealth and European Cases*, Note 3641, "No Liability for acts done in Judicial Capacity—Unless Interference with Rights or Freedoms Under Constitution." The date when this occurred in Britain is unknown to this author.

2

<u>Bradley v. Fisher</u>, too, was a case that arose out of an attorney discipline action. After he was disbarred, Bradley sued the judge who had deprived him of his right to practice as an attorney in the District of Columbia. By importing and relying on the Star Chamber case, <u>Floyd and Barker</u>, 12 Co.Rep. 23, 25, 77 Eng.Rep. 1305, 1307 (1607) (a case of conspiracy), the Court in <u>Bradley</u> was able to buttress an extension of the immunity doctrine expressed in <u>Randall</u> and to protect the judge under legal siege from liability. The result was that the high Court in <u>Bradley</u> gave judges the right to be malicious and corrupt and be invulnerable to suit by anyone. The negative effect of the extension totally deprived the governed, the people, the right to recourse against a malicious or corrupt judge.

Under <u>Randall</u>, Defendant BBO Chair M. Ellen Carpenter would be denied immunity, where she acted outside the scope of her authority as defined in the BBO's own rules. Under <u>Randall</u>, Defendant Herbert P. Phillips would be denied immunity, where he failed to act independently, in that the Board circumscribed Phillips' role to that of a mere puppet. The Board continually instructed Phillips as to what to do at the pretrial and trial hearings through its messenger, BBO Assistant General Counsel Carol Wagner (*see* details below). Under <u>Randall</u>, Defendant Bar Counsel Daniel Crane would be denied immunity, where he was but a titular quasi-prosecutor, and prosecutorial immunity had not yet been created either by a Congress or by judicial fiat.

Article V requires magistrates and all officers of all three branches of government to be accountable at all times to all the people, one of whom is Johnson. Under article V, Defendants Carpenter, Phillips, and Crane would be denied immunity.

Under <u>Bradley</u> in 1871, the BBO would not have been recognized as a court and Carpenter and Phillips would not have been recognized as judges. Phillips and Carpenter were never duly appointed in a procedure set out by constitution or statute. Phillips and Carpenter never took a juridical oath of office. And even under the <u>Bradley</u> standard, Defendant Bar Counsel Daniel Crane

3

would have been denied immunity, where he was but a titular quasi-prosecutor, and prosecutorial immunity had not been created either by a Congress or by judicial fiat. The only source of absolute immunity alleged for Crane is in §9(3) of Supreme Judicial Court Rule 4:01 and

- after doing an electronic search from <http://www.state.ma.us/legis/laws/mgl-/mgllink.htm>, there appears to be **no** statutory authority for the promulgation of those rules

- there is no reference to the Supreme Judicial Court Rules of their promulgation in either the statutes or the SJC's website

- the Board of Bar Overseers does not appear on the Commonwealth's list of "Authorities & Quasi-public Agencies"

- at <http://www.state.ma.us/courts/courtsandjudges/courts/supremejudicialcourt-/about.html#sjcrules> the SJC wrote, "The Justices of the Supreme Judicial Court established the Board of Bar Overseers, the Office of Bar Counsel, and the Clients' Security Board (CSB) **by rule** in 1974" [emphasis supplied] [Exhibit A attached]

- the SJC Rules Committee, according to <http://www.state.ma.us/courts/courtsand-judges/courts/supremejudicialcourt/about.html#rules1>, is "[m]ade up of three SJC Justices (excluding the Chief Justice). Oversees uniform rules (e.g. Mass. R. Civ. P., Mass. R. Crim. P., Mass R.A.P., Mass. R. Prof. C.) and approves rules of all lower courts and various agencies (e.g. Judicial Conduct Commission; Clients' Security Board). Considers proposals for new rules – e.g. foreign legal consultants, rules of evidence, mandatory malpractice insurance, etc. [Exhibit A attached]

- at <http://www.state.ma.us/courts/courtsandjudges/courts/supremejudicialcourt-/about.html#affiliated>, the SJC lists the BBO and the OBC as "**Affiliated Entities**" that were established by rule in 1974 [Exhibit A attached]

The reasonable conclusions that can be obtained from the above facts are the following:

**(1)** The BBO and OBC are only "Affiliated Entities." An "Affiliated Entity" is not a court of the type contemplated in 1871, when the Court in Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347 (1871) imported the doctrine from Britain.

**(2)** SJC Rule 4:01 has no cognizable juridical source that can authorize the promulgation and legal effect of §9(3), which bestows absolute immunity upon the members of the BBO and OBC and their staffs. Even the superior and the inferior courts that have during the last century and a quarter perpetuated the Bradley doctrine of judicial immunity would require a legal ba-

4

sis for bestowing absolute judicial or quasi-judicial immunity on private individuals who are employed by or associated with "Affiliated Entities" of the SJC.

**(3)** Carpenter, Phillips, and Crane may not rely on §9(3) as the source of their defense of absolute immunity for §9(3) cannot overrule the duly ratified article V of the Massachusetts Declaration of Rights.

**(4)** Carpenter, Phillips, and Crane may also not rely on the judicially-created judicial or quasi-judicial immunity, for they are not functioning in an entity that may or can pass for a court of any kind.

**9.    The three natural defendants are not entitled to absolute judicial immunity for acting in quasi-judicial capacities, for none was the type of judge contemplated by the state and federal constitutions or statutes and none has acted in a judge-like manner, and one, Crane, was at no time a judge or a quasi-judge.**

The three natural defendants -- M. Ellen Carpenter, Herbert P. Phillips, and Daniel Crane -- are not entitled to absolute immunity for acting in quasi-judicial capacities for reasons including but not limited to the following.

**(1)** Carpenter, as set out in Johnson's Brief on Quasi-judicial and Quasi-prosecutorial Immunity, was but a "Shadow Judge." She had no reference of appointment. She was not appointed to serve on a hearing panel or committee or as a special hearing officer. The Board Rules allowed her to decide dispositive motions, but **only** if they were filed by Johnson. What kind of a judge can decide the motions of only one of the parties? That is not to say that there are no judges who only have the opportunity to decide motions from one party – for instance, circuit judges who see the parties only one time for a particular motion hearing -- but not because they do not have authority to hear the other parties.

Additionally, notwithstanding the Board Rules, Carpenter did also step outside of her authority and decide nondispositive motions. Carpenter's deciding nondispositive motions, Johnson

contends, was not only a Board policy but also a Board practice intended and designed to deprive respondent attorneys of the right to produce testimonial and documentary evidence and cross-examine their adversaries. The veil behind which these practices take place is maintained by SJC Rule 4:01, §9(3), the immunity provision covering the natural defendants here.

Johnson contends that it is crystal clear that the SJC recognized that the doctrine of judicial immunity is inapplicable to the BBO and so promulgated SJC Rule 4:01, §9(3), specifically for the purpose of bestowing the grant of immunity upon persons employed at and associated with the BBO and OBC. With §9(3) in place, Carpenter, Phillips, and Crane have been able to believe that they have unfettered and unbridled and unlimited boundless power to do what they have wanted to do during BBO hearings!

**(2)** For the reasons stated in Johnson's companion Brief on the quasi-immunities, Herbert P. Phillips was also not a "judge" as contemplated by either the doctrine of judicial immunity or by the Board Rules. Like a puppet, Phillips was advised and counseled continuously throughout the pretrial and trial hearings by BBO Assistant General Counsel Carol Wagner. She prompted him by whispering in his ear during those hearings. After Johnson queried what was going on, Wagner responded – on the record – that she was Phillips' counsel. Thereafter Wagner and Phillips called "Time-out," went off the record, left the hearing room, and went into a room adjacent to the hearing room in order to converse in private. It appeared that Wagner was orchestrating the hearing so that Phillips would make predetermined rulings in the OBC and BBO's favor. For instance, each of Johnson's motions was denied summarily, without any consideration of the facts or the law. The process was unlike that of any court. It resembled more a Theatre of the Absurd. Phillips had the role of the BBO's messenger and Wagner was writing the messages. To be discovered is the identity of the person or persons whose bidding Wagner was doing.

**(3)** And Crane was both a prosecutor and a plaintiff in the disciplinary action at the

6

same time.  That which was unusual about his role is that he was performing his alleged duties for the judicial branch, as opposed to the executive branch.   What is still unknown is the name of his employer and out of which account he is paid – the State coffers or the BBO or OBC coffers.  Johnson otherwise rests on her brief for the issues raised herein on the three possibilities:

- no immunity because Crane was performing ministerial functions in the case against Johnson.  Assistant Bar Counsel Susan Strauss-Weisberg was the active quasi-prosecutor;
- qualified immunity if he was policy making – which he was not doing when he was the titular plaintiff;
- absolute immunity.  Given that Crane's performance was not closely associated with the trial process, his conduct might warrant, at most, qualified immunity.  <u>Imbler v. Pachtman</u>, 424 U.S. 409, 430 (1976) (certain administrative or investigative conduct might warrant only qualified immunity).

Thus, where Defendant Crane pled only absolute judicial immunity, which he did not have, and failed to plead that he was entitled to qualified immunity, that portion of the Further Motion to Dismiss that applied to him must be denied.

WHEREFORE, Plaintiff prays this court deny the defendants' Further Motion to Dismiss.

Respectfully submitted,
Plaintiff Barbara C. Johnson, pro se,

16 March 2004

/s/ Barbara C. Johnson  <barbaracjohnson@worldnet.att.net>
Barbara C. Johnson, Esq., Pro Se
6 Appletree Lane
Andover, MA 01810-4102
978-474-0833
BBO #549972

## AFFIDAVIT OF BARBARA C. JOHNSON

I, Barbara C. Johnson, hereby swear and say that all the statements and observations I attribute to myself in the within pleading are true and accurate.   Sworn under the pains and penalties of perjury.

16 March 2004

/s/ Barbara C. Johnson <barbaracjohnson@worldnet.att.net>
Barbara C. Johnson, Esq., Pro Se

## PLAINTIFF'S CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)

I, Barbara C. Johnson, hereby certify, pursuant to Local Rule 7.1(A)(2), that I did not confer with AAG John Hitt because this brief was allowed by the court in its order of 25 February 2004. There was no need to "narrow" the issues.

16 March 2004

/s/ Barbara C. Johnson  <barbaracjohnson@worldnet.att.net>
Barbara C. Johnson, Esq.