UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BARBARA C. JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | NO. 03-12314-WGY |
| BOARD OF BAR OVERSEERS OF ) | |
| MASSACHUSETTS, ) | |
| M. ELLEN CARPENTER, in her ) | |
| individual and professional ) | |
| capacities, ) | |
| HERBERT P. PHILLIPS, in his ) | |
| individual and professional ) | |
| capacities, ) | |
| OFFICE OF BAR COUNSEL, ) | |
| DANIEL CRANE, in his individual ) | |
| and professional capacities, ) | |
| COMMONWEALTH OF MASSACHUSETTS, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM AND ORDER

YOUNG, C.J.                                    May 26, 2004


I.    **INTRODUCTION**

     This case involves a Massachusetts attorney, Barbara C.

Johnson, Esq. ("Johnson"), against whom the Massachusetts Office

of Bar Counsel has brought disciplinary charges before the

Massachusetts Board of Bar Overseers.  Johnson filed suit in this

Court against the Board of Bar Overseers, the Office of Bar

Counsel, the Commonwealth of Massachusetts and various

individuals, alleging that these administrative proceedings have been conducted unfairly and unlawfully.  Am. Verified Compl. ("Am. Compl.") [Doc. No. 5].  In her suit, Johnson alleges various violations of her civil rights under 42 U.S.C. §§ 1983 and 1985, and she also alleges defamation under state law.  Am. Compl. at 56.  She seeks declaratory and injunctive relief as well as money damages.  Id.  On January 9, 2004, all of the defendants filed a motion to dismiss the Complaint [Doc. No. 6], which this Court granted in part and denied in part in an order from the bench at oral argument on February 24th.  On February 25th, the Court clarified its order of the previous day, holding that Johnson's suit for money damages against the individual defendants in their personal capacities stated a cause of action, and inviting the parties to submit further briefing on the issues of quasi-judicial and quasi-prosecutorial immunity.  02/25/04 Order [Doc. No. 14].  In response, the defendants filed a "further motion to dismiss and supporting memorandum" [Doc. No. 15], claiming "absolute immunity," and Johnson filed her opposition to that motion [Doc. No. 18], asserting that neither quasi-judicial nor quasi-prosecutorial immunity is applicable [Doc. No. 17], and a motion for reconsideration of this Court's February 25th order dismissing her claims for declaratory relief ("Pl.'s Mot. for Reconsideration") [Doc. No. 20].  The Court has carefully considered the parties' arguments.  This memorandum and

order addresses the remaining claims in this action and sets forth the reasoning underlying the Court's previous orders.

**II.    BACKGROUND**

On January 24, 2003, Massachusetts Bar Counsel Daniel Crane ("Bar Counsel") filed a Petition for Discipline, Ex. to Mot. to Impound [Doc. No. 10] ("Pet.") (copy of the Petition), before the Board of Bar Overseers of the Commonwealth of Massachusetts against Johnson.  The Petition contains three counts detailing Johnson's alleged misconduct.

Count I of the Petition alleges that Johnson posted impounded "privileged, confidential and highly personal information" to her website in violation of Mass. Gen. Laws ch. 209C, § 13.  Pet. ¶¶ 23-24.  Bar Counsel alleges, *inter alia*, that "by disseminating impounded material . . ., failing to return to the juvenile court impounded reports belonging to the court, and failing to remove impounded material from her web site, [Johnson] violated Mass. R. Prof. [C.] 8.4(d) and (h) . . . ."  Pet. ¶ 42.

Count II alleges that Johnson charged two clients an excessive fee in violation of Mass. R. Prof. C. 1.5(a), made false, deceptive or misleading representations to them about her fees, time, and charges, in violation of Mass. R. Prof. C. 8.4(c) and (h), commingled her own funds with theirs, and failed to account adequately for her application and disposition of their

3

retainer in violation of Mass. R. Prof. C. 1.15(a)-(c), 1.16(d), and 8.4(c) and (h).  Pet. ¶¶ 95-99.

Count III alleges that Johnson knowingly disobeyed Massachusetts district court orders after those orders were affirmed on appeal, engaged in contempt of court, and refused to pay a judgment of contempt until she had been incarcerated, in violation of Mass. R. Prof. C. 3.4(c) and 8.4(d) and (h).  Pet. ¶ 126.  Count III further alleges that Johnson filed motions in another action without any legal or factual basis and in bad faith, exposing her client to dismissal of her claims and personal liability for sanctions and damages through Johnson's own misconduct, failed to appeal from the contempt judgment against her client, and pursued a frivolous appeal from an order of the Massachusetts Superior Court, in violation of Canon One, DR 1-102(A)(5) and (6), Canon Six, DR 6-101(A)(1)-(3), and Canon Seven, DR 7-101(A)(3).  Pet. ¶¶ 126-27.

Johnson denied all these charges and vigorously defended herself in the proceeding convened by the Board of Bar Overseers. A hearing was scheduled for December 2, 3, 4, 9, 10 and 11, 2003. Am. Compl. ¶ 176.  On December 2, during Johnson's opening statement, Assistant Bar Counsel objected to Johnson's mentioning the names of the complainants and various witnesses.  Id. ¶ 181. Johnson then attempted to avoid using real names, but when "[a] few times, she slipped," the defendant Phillips, the Special

4

Hearing Officer presiding over the case, ordered the public out of the hearing room. Id. ¶ 183-86. To protest this decision, Johnson walked out of the hearing room with the last of the public to leave. Id. ¶ 187. Johnson subsequently filed various unsuccessful motions with the Board of Bar Overseers, including motions to dismiss the complaint, for rehearing, for conference with the twelve members of the Board of Bar Overseers, and for reconsideration of the orders denying her prior motions. Id. ¶¶ 189-95. The matter remains pending before the Board of Bar Overseers.

Johnson next brought suit in this Court, seeking declaratory and injunctive relief as well as money damages. Alleging a total of ten causes of action, Johnson brought six Counts seeking declaratory judgments that various rules and procedures of the Board of Bar Overseers are unconstitutional, id. at 35-49 (Counts 1-6), two Counts for violation of her civil rights under 42 U.S.C. § 1983, id. at 49-52 (Count 7) and id. at 53-55 (Count 9), one Count for conspiracy to violate her civil rights under 42 U.S.C. 1985(3), id. at 52 (Count 8), and one count of defamation under state law, id. at 55 (Count 10).

Johnson asked this Court to declare (1) that a bar disciplinary proceeding is a quasi-criminal proceeding and that whether or not the proceeding is quasi-criminal, respondents are entitled to a jury trial, (2) that the Rules of the Board of Bar

Overseers are unconstitutional both facially and as applied to
civil or quasi-criminal proceedings, (3) that lawyers are
entitled to the full sweep of due process and equal protection of
all the laws, (4) that Sections 9(1), 9(2), and 9(3) of Supreme
Judicial Court Rule 4:01 are unconstitutional both facially and
as applied, (5) that Section 10 of Supreme Judicial Court Rule
4:01 is unconstitutional both facially and as applied, and (6)
that Rule 1.5 of the Massachusetts Rules of Professional Conduct
is unconstitutional on vagueness and overbreadth grounds.  Am.
Compl. at 1-2; id. ¶¶ 196-272.  Additionally, Johnson seeks money
damages from Bar Counsel for making allegedly defamatory
statements about her to a reporter that were subsequently
published in a local newspaper, as well as money damages from the
Board of Bar Overseers for posting on its website that
disciplinary proceedings are pending against her.  Id. ¶¶ 292-98.
Finally, Johnson alleges violation of her civil rights and
conspiracy by the defendants in the prosecution of the
disciplinary action against her and seeks fifteen million dollars
in compensatory damages plus punitive damages.  Id. ¶¶ 273-91.

**III. DISCUSSION**

Doctrines of abstention, Eleventh Amendment immunity, and
judicial and prosecutorial immunity all play a role in the
resolution of this case.

A.    __Younger__ Abstention Doctrine

The defendants initially moved to dismiss the entire complaint on the basis of the __Younger__ abstention doctrine. __Younger__ v. __Harris__, 401 U.S. 37 (1971).  __Younger__ requires that federal courts not intervene in ongoing state criminal proceedings.  __Bettencourt__ v. __Bd. of Registration in Med.__, 904 F.2d 772, 777 (1st Cir. 1990).   Deference is also required to "ongoing, originally state-initiated __civil__ or even __administrative__ proceedings that satisfy three conditions: (1) the proceedings are judicial (as opposed to legislative) in nature; (2) they implicate important state interests; and (3) they provide an adequate opportunity to raise federal constitutional challenges." __Id.__ (footnote omitted).

In __Middlesex County Ethics Committee__ v. __Garden State Bar Ass'n__, 457 U.S. 423 (1982), the plaintiff sought to have a federal court declare that certain of the Disciplinary Rules of the Code of Professional Responsibility of New Jersey were vague and overbroad and violated his First Amendment rights.  __Id.__ at 429.  The Supreme Court granted certiorari to determine whether a federal court should abstain from considering this challenge in light of the fact that state proceedings involving these rules and this party were ongoing.  __Id.__ at 425.  In ruling that the federal court ought abstain, the Supreme Court noted that "[t]he policies underlying __Younger__ are fully applicable to noncriminal

7

judicial proceedings when important state interests are
involved." Middlesex, 457 U.S. at 432 (citing Moore v. Sims, 442
U.S. 415, 423 (1979), and Huffman v. Pursue, Ltd., 420 U.S. 592,
604-05 (1975)).

To determine whether abstention would apply, the Supreme
Court applied the three-part Younger test to New Jersey's
disciplinary proceedings, asking: "first, do state bar
disciplinary hearings within the . . . jurisdiction of the State
Supreme Court constitute an ongoing state judicial proceeding[?];
second, do the proceedings implicate important state
interests[?]; and third, is there an adequate opportunity in the
state proceedings to raise constitutional challenges[?]"
Middlesex, 457 U.S. at 432.

The Supreme Court held that the first part of the test was
met in that it was clear that the New Jersey Supreme Court
considered its bar disciplinary proceedings to be "judicial" in
nature. Id. at 433-34. The second part of the test was also met
in that the state has an "extremely important interest in
maintaining and assuring the professional conduct of the
attorneys it licenses." Id. at 434. Finally, the third part of
the test was met in that the plaintiff had the opportunity to
raise his constitutional claims in the Supreme Court of New
Jersey. Id. at 435-36.

Bar disciplinary proceedings in Massachusetts are similar to those in New Jersey. The Supreme Judicial Court created the Board of Bar Overseers and Office of the Bar Counsel in 1974 as independent administrative bodies to investigate and evaluate complaints against lawyers. Mass. S.J.C. Rule 4:01 (effective September 1, 1974). The Supreme Judicial Court established these entities, "acting in accordance with its power to supervise the conduct of attorneys, and the board exists as the disciplinary arm of [the Supreme Judicial Court]." Binns v. Bd. of Bar Overseers, 369 Mass. 975, 976 (1976). Among its many powers and duties, the Board of Bar Overseers may consider and investigate the conduct of any lawyer within its jurisdiction, appoints a chief bar counsel and one or more hearing committees, and may also appoint a special hearing officer to hear charges of misconduct where the Board determines that a speedy and just disposition would better be accomplished by such appointment. Mass. S.J.C. Rule 4:01 § 5(3). Bar Counsel "prosecute[s] all disciplinary proceedings before hearing committees, special hearing officer[s], the Board [of Bar Overseers], and [the Supreme Judicial Court]." Mass. S.J.C. Rule 4:01 § 7(3). The hearing committees and special hearing officers "conduct hearings on formal charges of misconduct . . . and may recommend that the matter be concluded by dismissal, admonition, public reprimand, suspension, or disbarment." Mass. S.J.C. Rule 4:01 § 6(3).

9

The attorney disciplinary procedure in Massachusetts thus meets the first test that the proceedings be "judicial in nature." <u>Middlesex</u>, 457 U.S. at 433.

The second part of the test is also met in that Massachusetts, like New Jersey, has an "extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses." <u>Id.</u> at 434.

The third requirement for abstention principles to apply is that the state disciplinary proceeding must afford plaintiffs an adequate opportunity to raise constitutional challenges. <u>Id.</u> at 432. The review of a hearing committee's (or special hearing officer's) report is first to the Board, next to a single justice of the Supreme Judicial Court, and the decision of the single justice may be appealed to the full bench of the Supreme Judicial Court. Mass. S.J.C. Rule 4:01 § 8(4). The rules direct that the "Board <u>shall review</u>, and may revise, the findings of fact, conclusions of law and recommendation of the hearing committee, special hearing officer, or hearing panel" in a disciplinary action. <u>Id.</u> (emphasis added).

The Supreme Judicial Court recently summarized its standard of review as follows:

> Our general standard of review when a disciplinary sanction imposed by a single justice is challenged is whether the sanction "is markedly disparate from judgments in comparable cases." But where the case is unique or involves a matter

> of first impression and is therefore not comparable to
> previous cases, we "review the decision of the single
> justice to determine whether it is supported by sufficient
> evidence, constitutes an abuse of discretion, and is free
> from any error of law."  In either instance, our review of
> the single justice's decision is de novo, but tempered with
> substantial deference to the board's recommendation.

Matter of Foley, 439 Mass. 324, 333 (2003) (citations omitted).

The Massachusetts Supreme Judicial Court acknowledges that an

attorney, such as Johnson, has a "constitutionally protected

interest in [her] license to practice law and that [she] must be

afforded due process of law before [she] can be deprived of that

interest."  Matter of Kenney, 399 Mass. 431, 435 (1987).  In

Kenney, the respondent attorney raised Fifth and Fourteenth

Amendment claims that were given full consideration by the

Supreme Judicial Court.  Indeed, "it cannot be doubted that the

courts of the Commonwealth . . . will give federal constitutional

issues . . . the closest scrutiny."  Bd. of Locomotive Eng'rs v.

Massachusetts Comm'n Against Discrimination, 695 F. Supp. 1321,

1323 (D. Mass. 1988).  Massachusetts law expressly guarantees to

any aggrieved party the right of judicial review of

administrative decisions, with the reviewing court having the

power, *inter alia*, to modify them or to set them aside if they

are issued:

> (a)  In violation of constitutional provisions; or
> (b)  In excess of the statutory authority or jurisdiction of
>      the agency; or
> (c)  Based upon an error of law; or

```
(d)  Made upon unlawful procedure; or

(e)  Unsupported by substantial evidence; or

(f)  Unwarranted by facts found by the court on the record
     as submitted . . .; or

(g)  Arbitrary or capricious, an abuse of discretion, or
     otherwise not in accordance with law.
```

Mass. Gen. Laws ch. 30A, § 14(7).  Since Johnson will have an
opportunity to raise her constitutional claims in the courts of
the Commonwealth, the third and final requirement of <u>Younger</u> is
met.

Nonetheless, even where, as here, all three requirements of
<u>Younger</u> are satisfied, "a federal court may nonetheless intervene
to halt a an ongoing state judicial proceeding if the plaintiff
demonstrates 'bad faith, harassment, or any other unusual
circumstance.'" <u>Brooks</u> v. <u>New Hampshire Supreme Court</u>, 80 F.3d
633, 639 (1st Cir. 1996) (quoting <u>Younger</u>, 401 U.S. at 54).  To
invoke the "bias" exception to the <u>Younger</u> abstention doctrine,
<u>Brooks</u> first requires a plaintiff to seek to recuse allegedly
biased judges in the state proceeding.  <u>Id.</u> at 640; <u>see also</u>
<u>Middlesex</u>, 457 U.S. at 435; <u>Bettencourt</u>, 904 F.2d at 780;
<u>Standard Alaska Prod. Co.</u> v. <u>Schaible</u>, 874 F.2d 624, 629 (9th
Cir. 1989).  Unlike Brooks, who did not seek the recusal of any
allegedly biased judge, Johnson <u>has</u> sought recusal of the Special
Hearing Officer, the Board Chair, and Bar Counsel.  Pl.'s Mem.
Opp'n [Doc. No. 9] at 13.  Thus, she meets this first
requirement.

Second, Johnson must offer "some evidence that abstention will jeopardize [her] due process right to an impartial adjudication." <u>Brooks</u>, 80 F.3d at 640.  "To implicate due process, claims of general institutional bias must be harnessed to a further showing, such as a potential conflict of interest, or a pecuniary stake in the outcome of the litigation." <u>Id.</u> (internal citations omitted).  In her attempt to meet this burden, Johnson offers a "further showing" of "her crusade for court reform and the abolition of judicial and quasi-judicial immunity."  Pl.'s Mem. Opp'n at 14.  She claims that her "views on the need for judicial accountability and the need for court reform are well-known to the courts," that the Board of Bar Overseers and Office of Bar Counsel are "offspring of the SJC," that Board of Bar Overseers Chair Carpenter's "colleague and former partner is sitting on the SJC bench that appointed her to the Board," and that appeal would be "futile" based on her past experience bringing "a few cases to the SJC," where the Supreme Judicial Court made "what Johnson perceived to be unconscionable decisions in those few cases."  Am. Compl. ¶ 111.  She also alleges that the ulterior motive of Bar Counsel is to censor her website, and thereby to interfere with her exercise of her "First Amendment right to political speech and free expression, as well as her right and obligation to see that justice is done."  Am. Compl. ¶ 46.  Despite these numerous conclusory allegations,

13

Johnson offers no concrete evidence that the Office of Bar Counsel, the Board of Bar Overseers, the Supreme Judicial Court, or any of the individual defendants stand to gain or lose anything or have any particularized interest that might tend to undermine their impartiality. See Brooks, 80 F.3d at 640. Therefore, the bias exception to Younger does not apply.

Since "Younger contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts," Gibson v. Berryhill, 411 U.S. 564, 577 (1973), this Court dismissed Johnson's claims for declaratory relief. Having done so, Johnson's sole appeal from an unfavorable state court decision will be to the United States Supreme Court, since "[i]t is well-established that lower federal courts have no jurisdiction to hear appeals from state court decisions, even if the state judgment is challenged as unconstitutional." Schneider v. Colegio de Abogados de Puerto Rico, 917 F.2d 620, 628 (1st Cir. 1990). See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923). See also 28 U.S.C. § 1257.

Johnson, however, argues that District of Columbia Court of Appeals v. Feldman should permit her to attack the validity of the Board of Bar Overseers rules in this Court. Pl.'s Mot. for Reconsideration. Her reliance on Feldman is misplaced, however.

14

The Supreme Court in <u>Feldman</u> addressed the so-called <u>Rooker</u> doctrine in a challenge to rules and regulations governing bar admission policies. <u>Feldman</u>, 460 U.S. at 468. "The Court carefully distinguished between 'general challenges to state bar rules, promulgated by state courts in nonjudicial proceedings' -- for which there is jurisdiction in the lower federal courts -- and 'challenges to state-court decisions in particular cases arising out of judicial proceedings,' -- for which there is not." <u>Schneider</u>, 917 F.2d at 628 (quoting <u>Feldman</u>, 460 U.S. at 486).

Were Johnson not engaged in state administrative proceedings involving the same rules as those cited in her complaint, <u>Feldman</u> might well permit her to challenge the constitutionality of those rules in federal court. <u>See</u> <u>Maymó-Meléndez</u> v. <u>Álvarez-Ramírez</u>, 364 F.3d 27, 34 (1st Cir. 2004) ("<u>Rooker-Feldman</u> does <u>not</u> insulate from federal challenge <u>administrative</u> rulings standing alone." (citing <u>Van Harken</u> v. <u>City of Chicago</u>, 103 F.3d 1346, 1349 (7th Cir. 1997)) (emphasis in original). Since Johnson's challenge emanates from the proceeding currently underway in the Massachusetts Board of Bar Overseers, however, <u>Younger</u> requires abstention on her claims for declaratory and equitable relief. Moreover, "once a state judicial proceeding [has] begun," <u>Younger</u> requires the "exhaustion of state judicial remedies" even though a final state court judgment would likely preclude any new

federal lawsuit. <u>Maymó-Meléndez</u>, 364 F.3d at 34-35 (citing <u>Huffman</u>, 420 U.S. at 607-11).

The <u>Younger</u> abstention doctrine does not apply, however, to Johnson's claims for money damages pursuant to Section 1983 or Section 1985, or to her defamation claim, since she will not have the opportunity to make these claims in the state proceeding. <u>See</u> <u>Deakins</u> v. <u>Monaghan</u>, 484 U.S. 193, 202 (1988) (stating that even if the <u>Younger</u> abstention applies, the district court has no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding). Thus, while declaratory judgment Counts 1 through 6 were dismissed in toto in reliance on <u>Younger</u>, the civil rights Counts 7 through 9 were dismissed under <u>Younger</u> only to the extent that Johnson sought equitable relief.

## B. Eleventh Amendment Immunity

It is settled law "that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action." <u>Wang</u> v. <u>New Hampshire Bd. of Reg. in Med.</u>, 55 F.3d 698, 700 (1st Cir. 1995) (quoting <u>Johnson</u> v. <u>Rodriquez</u>, 943 F.2d 104, 108 (1st Cir. 1991)) (internal quotations omitted). Eleventh Amendment immunity applies to all claims for money damages against the state entities here, as well as to their employees to the extent that the employees were sued

16

in their official capacities.  Kentucky v. Graham, 473 U.S. 159, 169 (1985).  The Board of Bar Overseers and the Office of Bar Counsel are both entities created by court rule to support the operation of the Courts of Massachusetts through regulation of the Bar.  As such, they are arms of the state, subject to the Eleventh Amendment bar against suits for money damages in federal court.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).  The individuals named are also immune from suit based on their actions taken in their official capacities. Bettencourt, 904 F.2d at 781.

"A State may waive its sovereign immunity by consenting to be sued in federal court."  Maysonet-Robles v. Cabrero, 323 F.3d 43, 49 (1st Cir. 2003) (citing College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board, 527 U.S. 666, 670 (1999)).  Such waivers, however, must be unequivocal.  College Savings Bank, 527 U.S. at 675.  There being no such waiver here, the Court dismissed Counts 7 through 9 to the extent that they sought money damages against the Commonwealth of Massachusetts, the Board of Bar Overseers, the Office of Bar Counsel, and the individual defendants sued for actions taken in their official capacities.

**C.    Quasi-Judicial and Quasi-Prosecutorial Immunity**

At this point, the only defendants remaining are Board Chair Carpenter, Special Hearing Officer Phillips, and Bar Counsel Crane in their individual capacities.  The only federal claims remaining are Counts 7 through 9, and only to the extent that Johnson seeks money damages against these persons in their individual capacities.  These defendants are, however, entitled to absolute immunity for acts committed within the scope of their responsibilities.

In <u>Bettencourt</u> v. <u>Board of Registration in Medicine</u>, 904 F.2d 772 (1st Cir. 1990), the court explained that "there are some officials whose special functions require a full exemption from liability." <u>Id.</u> at 782 (quoting <u>Butz</u> v. <u>Economou</u>, 438 U.S. 478, 508 (1977)) (internal quotation marks omitted).  "Such officials include, among others, judges performing judicial acts within their jurisdiction, prosecutors performing acts intimately associated with the judicial phase of the criminal process, and certain 'quasi-judicial' agency officials who, irrespective of their <u>title</u>, perform <u>functions</u> essentially similar to those of judges or prosecutors, in a setting similar to that of a court." <u>Bettencourt</u>, 904 F.2d at 782 (emphasis in original) (internal citations and quotation marks omitted).  <u>Bettencourt</u> involved a civil rights action brought by a physician whose medical license had been revoked by the Board of Registration in Medicine.  After dismissing the non-monetary claims on <u>Younger</u> grounds, the Court

18

determined whether the Board members were entitled to absolute judicial immunity by applying a three-part test:

> First, does a Board member, like a judge, perform a traditional "adjudicatory" function, in that he decides facts, applies law, and otherwise resolves disputes on the merits (free from direct political influence)? Second, does a Board member, like a judge, decide cases sufficiently controversial that, in the absence of absolute immunity, he would be subject to numerous damages actions? Third, does a Board member, like a judge, adjudicate disputes against a backdrop of multiple safeguards designed to protect a physician's constitutional rights?

Bettencourt, 904 F.2d at 783. The Court held that the Board members, in deciding to revoke Bettencourt's license, were acting in their adjudicative rather than legislative capacities and, having met the other requirements, were entitled to absolute quasi-judicial immunity for these actions. Id. at 784.

The situation of Board Chair Carpenter and Special Hearing Officer Phillips is analogous to that of the Board members in Bettencourt. First, these defendants are performing a traditional adjudicatory function by determining whether to recommend Johnson for disciplinary sanctions after making factual and legal determinations, thereby meeting the first requirement. Second, the act of recommending that an attorney be disciplined is "likely to stimulate a litigious reaction from the disappointed [attorney], making the need for absolute immunity apparent." Id. at 783. Third, as described earlier, multiple levels of review exist, up to and including review by the full

19

Supreme Judicial Court.  Moreover, Johnson makes no allegations
of conduct of these defendants <u>outside</u> their roles as
adjudicators of her case.  Therefore, as did the First Circuit in
<u>Bettencourt</u>, this Court "hold[s] that absolute immunity bars
[Johnson's] claims for damages against the Board members acting
in their 'quasi-judicial' capacities."  <u>Id.</u> at 784.

Defendant Crane, however, is not acting in an adjudicative
role; his role is prosecutorial in nature.  As Bar Counsel, he
"prosecute[s] all disciplinary proceedings before hearing
committees, special hearing officer[s], the Board [of Bar
Overseers], and [the Supreme Judicial Court]."  Rule 4:01 § 7(3).
Like adjudicators, prosecutors enjoy absolute immunity against
damages actions under Section 1983 for activities in their quasi-
judicial capacity, <u>Imbler</u> v. <u>Pachtman</u>, 424 U.S. 409, 430-31
(1976), and "[s]tate officials performing prosecutorial functions
-- including their decisions to initiate administrative
proceedings aimed at legal sanctions -- are entitled to absolute
immunity as well," <u>Wang</u>, 55 F.3d at 701.  Crane is, therefore,
entitled to absolute immunity based on his role as prosecutor in
the Board of Bar Overseers action against Johnson, and the Court
dismisses Counts 7 through 9.

With all federal claims dismissed, the Court exercises its
discretion to refrain from exercising supplemental jurisdiction
over Johnson's remaining claim for defamation.

20

## IV.  CONCLUSIONS

For the reasons stated above, Counts 1 through 6, for declaratory and injunctive relief, and Counts 7 through 9, insofar as they sought injunctive or declaratory relief, were dismissed on the basis of the Younger abstention doctrine. Counts 7 through 9, insofar as they sought money damages, were dismissed as to the defendants Board of Bar Overseers, Commonwealth of Massachusetts, Office of Bar Counsel, and named individuals acting in their professional capacities pursuant to their Eleventh Amendment immunity from suit.  Counts 7 through 9, seeking money damages based on the actions of Defendants M. Ellen Carpenter, Herbert P. Phillips, and Daniel Crane in their individual capacities are hereby dismissed on the basis of those defendants' absolute immunity arising from their quasi-judicial and quasi-prosecutorial roles in the Board of Bar Overseers and the Office of Bar Counsel.  Thus, Counts 1 through 9 have been dismissed with prejudice.

As to Count 10, the state law claim for defamation against the Board of Bar Overseers and Bar Counsel Crane, the Court declines to exercise supplemental jurisdiction and dismisses this Count without prejudice.  As a result, the Motions to Dismiss [Doc. Nos. 6, 15] have been ALLOWED in full.

21

Finally, the Court DENIES Johnson's Motion for Reconsideration of the January 25, 2004 Order [Doc. No. 20].

As there are no remaining claims or defendants, this action is hereby DISMISSED.

SO ORDERED.

/s/ William G. Young
_____
WILLIAM G. YOUNG
CHIEF JUDGE