PLAINTIFF'S MOTION TO RECONSIDER THE MATTERS
IN THE MEMORANDUM AND ORDER OF 26 MAY 2004,
AND VACATE THE DISMISSAL OF COUNTS 7-10

Case 1:03-cv-12314-WGY   Document 23   Filed 05/31/2004   Page 1 of 12

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

C.A. No. 03-CV-12314-WGY

**Barbara C. Johnson, Esq.**
Plaintiff

v.

**Board of Bar Overseers of Massachusetts,**
**M. Ellen Carpenter, Esq.,** in her individual and professional capacities,
including her capacity as Chair of the Board of Bar Overseers,
**Herbert P. Phillips, Esq.,** in his individual and professional capacities,
**Office of Bar Counsel,**
**Daniel Crane, Esq.,** in his individual and professional capacities,
**Commonwealth of Massachusetts,**
Defendants

-------------------------------------------------------------------------------------

**PLAINTIFF'S MOTION TO RECONSIDER THE MATTERS IN THE MEMORANDUM
AND ORDER OF 26 MAY 2004, AND VACATE THE DISMISSAL OF COUNTS 7-10
(with Affidavit and Local Rule 7.1(A)(2) Certification)**

Now comes Plaintiff Barbara C. Johnson and moves this court to reconsider the matters in the Memorandum and Order of 26 May 2004, and to vacate the dismissal of Counts 7-10.

As grounds, Johnson states **(1)** that the BBO proceedings were administrative not judicial, **(2)** that there is no evidence whatsoever in this case that Bar disciplinary proceedings in Massachusetts are similar to those in New Jersey, **(3)** that this action is not an appeal of a State court decision, **(4)** that where the claims in this action are distinct from the issues in the State proceeding, e.g., the money damage claims in this action do *not* exist in the State action, Younger does not preclude this action, **(5)** that the State has long waived the common-law doctrine of sovereign immunity, **(6)** that Phillips, Carpenter, and Crane were not "adjudicators" as contemplated by any known cases, and **(7)** that there is no evidence whatsoever regarding Crane's function other than that he served as titular Plaintiff, and thus was not entitled to immunity.

In factual support of her motion, Johnson states that those of this Court's statements which are set out in shaded boxes are inaccurate and unsustainable for the reasons set forth beneath the

1

PLAINTIFF'S MOTION TO RECONSIDER THE MATTERS
IN THE MEMORANDUM AND ORDER OF 26 MAY 2004,
AND VACATE THE DISMISSAL OF COUNTS 7-10

Case 1:03-cv-12314-WGY    Document 23    Filed 05/31/2004    Page 2 of 12

shaded paragraphs.  Where the reasons were set out in previously filed documents (such as Johnson's oppositions to the motions to dismiss and Johnson's brief on quasi-judicial and quasi-prosecutorial immunity), they are set out in "boxes."  Where Johnson's comments are new, they are simply double-spaced, as is this paragraph.

1. Bar disciplinary proceedings in Massachusetts are similar to those in New Jersey.  [Mem-Order, at 9].

Where Massachusetts' Bar proceedings are administrative in nature and those in New Jersey are judicial in nature, it is untrue that "Bar disciplinary proceedings in Massachusetts are similar to those in New Jersey."  See Johnson's response to the shaded item #2, *infra*.

2. The attorney disciplinary procedure in Massachusetts thus meets the first test that the proceedings be "judicial in nature."  [Mem-Order, at 10 (internal citations omitted)].

First, it is clear that a bar disciplinary proceeding in Massachusetts is administrative not judicial in nature.  Second, it is clear that the assistant attorney general falsified quoted text to make it appear that Massachusetts bar disciplinary proceedings were judicial in nature as are New Jersey's.  Third, this Court must not countenance the reprehensible misrepresentation by the assistant attorney general as being true.

As argued in her brief at 6-7, "Massachusetts has held fast to the notion that bar disciplinary proceedings are administrative proceedings, for to do otherwise, the SJC could not allow the BBO to operate as a quasi-administrative body under the Administrative Practice Act, which allows the BBO to avoid using the rules of evidence.  The change AAG Hitt made *is* significant.  The Massachusetts SJC does not want to consider its bar disciplinary proceedings as 'judicial in nature,' for it would have to change how the BBO is doing business."  [Johnson's brief, at 6-7 (footnotes omitted)].

PLAINTIFF'S MOTION TO RECONSIDER THE MATTERS
IN THE MEMORANDUM AND ORDER OF 26 MAY 2004,
AND VACATE THE DISMISSAL OF COUNTS 7-10

Case 1:03-cv-12314-WGY   Document 23   Filed 05/31/2004   Page 3 of 12

> Moreover, there appear to be no cases in which Massachusetts has declared a bar disciplinary proceeding to be "judicial in nature." The most the SJC has declared is, a bar disciplinary process is "an <u>administrative process</u> under the authority of the justices of the Supreme Judicial Court." <u>Matter of Jones</u>, 425 Mass. 1005, 1008 (1997) (emphasis supplied). The Massachusetts SJC had had 15 years to adopt – but did <u>not</u> adopt -- the holding of the United States Supreme Court that attorney disciplinary proceedings are judicial proceedings for purposes of <u>Younger</u> abstention. <u>Middlesex County Ethics Committee v. Garden State Bar Association</u>, 457 U.S. 423, 433-434 (1982). *But see* <u>id</u>. at 429, where the USSC reminds the reader of the Third Circuit's determination that disciplinary proceedings are "administrative, 'nonadjudicative' proceedings."

> **NOTE**
>
> The defendants' counsel, Assistant Attorney-General Hitt,
> altered the statement allegedly quoted from the <u>Middlesex</u> case [<u>Defs. Mem. at 4</u>].
>
> **THE TRUE STATEMENT ALLEGEDLY QUOTED**:
>
> *It is clear beyond doubt that the New Jersey Supreme Court considers its bar disciplinary proceedings as "judicial in nature." <u>Id</u>. at 433-434.*
>
> **ASSISTANT A-G HITT'S FALSIFIED QUOTATION**
>
> *It is clear beyond doubt that **[Massachusetts Supreme Judicial]** Court considers its bar disciplinary proceedings as "judicial in nature." <u>Id</u>. at 433.*

3.     Having done so, Johnson's sole appeal from an unfavorable state court decision will be to the United States Supreme Court, since "[i]t is well-established that lower federal courts have no jurisdiction to hear appeals from state court decisions, even if the state judgment is challenged as unconstitutional." [Mem-Order, at 14 (internal citations omitted)].

This Honorable Court is erring by applying the wrong law. Where there is no state-court decision, Johnson has not requested appeal in this or any other court.

> There is, indeed, a pending quasi-administrative State delicensing proceeding. No final recommendation or judgment or order has issued in that case. And Johnson does not ask this court to vacate, modify, or alter any of the interlocutory rulings, decisions, or orders that have emanated in that State case. [Johnson's brief, at 1-2].

If, when a decision is rendered in the Bar disciplinary action, it is unfavorable to Johnson, she will appeal up the state-court ladder, as remarked by this court, and will ultimately seek review in the U.S. Supreme Court, if necessary.

> Where **(a)** no statute is being challenged in the State OBC/BBO action against

3

> Johnson and **(b)** no State criminal prosecution is pending against Johnson, she need not demonstrate the existence of the Younger factors to justify the issuance of a declaratory judgment.
>
> However, a preliminary injunction may issue to preserve the *status quo* while this court considers whether to grant declaratory relief [*see* Doran v. Salem Inn, 422 U.S. 922 (1975)], and if this court does grant declaratory relief, it may also issue a permanent injunction if necessary to protect Johnson's constitutional rights. *See* Wooley v. Maynard, 430 U.S. 705 (1977). . . [Johnson's brief, at 4].

4.   . . . "The Court carefully distinguished between 'general challenges to state bar rules, promulgated by state courts in ***nonjudicial proceedings***' –- for which there is jurisdiction in the lower federal courts –- and 'challenges to state-court decisions in particular cases arising out of ***judicial proceedings***,' –- for which there is not." . . .

   Were Johnson not engaged in state ***administrative proceedings*** involving the same rules as those cited in her complaint, Feldman might well permit her to challenge the constitutionality of those rules in federal court. . . . ("Rooker-Feldman does not insulate from federal challenge ***administrative rulings*** standing alone.") . . . Since Johnson's challenge emanates from the proceeding currently underway in the Massachusetts Board of Bar Overseers, however, Younger requires abstention on her claims for declaratory and equitable relief. Moreover, "once a state ***judicial proceeding*** [has] begun," Younger requires the "exhaustion of state judicial remedies" even though a final state court judgment would likely preclude any new federal lawsuit. [Mem-Order, at 15-16 (internal citations omitted) ***Emphasis supplied here***].

In shaded items ##1 and 2, this Court determined – albeit inaccurately that the proceedings at the State Bar are judicial in nature. To reach that conclusion, this Court appears to have accepted as true the Attorney General's serious ***mis***representation. There simply is no similarity between the New Jersey and Massachusetts Bars. To conclude otherwise is reversible error. With a re-reading of Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423, 433-434 (1982) and a subsequent closer inspection of the assistant A-G's misrepresentation -- which should not be countenanced by this court -- would very likely clear up this Honorable Court's misapprehension and apparent confusion.

For instance, contrary to what the Court declared in items ##1 and 2, this Court declares in shaded item #4 that the proceedings at the State Bar are administrative in nature. This change in

4

PLAINTIFF'S MOTION TO RECONSIDER THE WAIVERS
IN THE MEMORANDUM AND ORDER OF 26 MAY 2004,
AND VACATE THE DISMISSAL OF COUNTS 7-10

Case 1:03-cv-12314-WGY    Document 23    Filed 05/31/2004    Page 5 of 12

characterization infects the Memorandum and Order that issued on 26 May 2004, which Johnson seeks to be vacated and the issues within it reconsidered. The vacillation from one type of proceeding to another and back again causes the Memorandum and Order to be internally inconsistent.

5.  "A State may waive its sovereign immunity by consenting to be sued in federal court." . . . Such waivers, however, must be unequivocal. There being no such waiver here, the Court dismissed Counts 7 through 9 to the extent that they sought money damages against the Commonwealth of Massachusetts, the Board of Bar Overseers, the Office of Bar Counsel, and the individual defendants sued for actions taken in their official capacities. [Mem-Order, at 17-18 (internal citations omitted)].

**The Short Version of the History of Sovereign Immunity in the Commonwealth**

In the Commonwealth of Massachusetts, the Framers of the Constitution never bestowed sovereign immunity, for the Commonwealth as well as judges are "persons." For instance, **(a)** the Preamble of the Massachusetts Constitution defines the Commonwealth as a "Body politic . . . formed by a voluntary association of individuals" and **(b)** in M.G.L. c. 4, §7, the legislature declared that an "association" is amongst the entities that is a "person" for all purposes.

A similar result has been conceded in the United States Supreme Court: "[T]he expressed intent of Congress, manifested virtually simultaneously with the enactment of the Civil Rights Act of 1871, was that the States themselves, as bodies corporate and politic, should be embraced by the term "person" in sec. 1 of that Act." Quern v. Jordan, 440 U.S. 332, 355-357 (1979).

Similarly, according to Mr. Justice William Douglas, who traced the legislative history of §1983 (in Cong. Globe, 42d Cong., 1st Sess.), the congressional intent was to hold judges, as well as every other person, liable for the deprivation of a citizen's civil rights. "There was no exception for members of the judiciary." Pierson v. Ray, 386 U.S. 547, 563 (1967) (Douglas, J., dissenting). Although Mr. Justice Douglas was in the minority, his facts are nevertheless accurate. Where the Commonwealth of Massachusetts, has been a body politic, a social compact, an association of individual persons, for years before the U.S. Constitution was ratified, there is,

5

PLAINTIFF'S MOTION TO RECONSIDER THE MATTERS
IN THE MEMORANDUM AND ORDER OF 26 MAY 2004,
AND VACATE THE DISMISSAL OF COUNTS 7-10

Case 1:03-cv-12314-WGY    Document 23    Filed 05/31/2004    Page 6 of 12

logically, no sovereign immunity in Massachusetts. Where sovereign immunity was also not memorialized in either the Commonwealth's constitution or its statutes, there is no sovereign immunity to waive. (The Massachusetts Torts Claim Act ["MTCA"] is discussed in n. 3, *infra*.)

**The Long Version of the History of Sovereign Immunity in the Commonwealth**

Article V of the Massachusetts Declaration of Rights guarantees that the three branches of government be accountable to the people, of whom Gouin is one:

> All power residing originally in the people, and being derived from them, the several magistrates and officers of government, vested with authority, whether legislative, executive, or judicial, are their substitutes and agents, and are at all times accountable to them.

Constitution of the Commonwealth of Massachusetts, Part the First, art. 5, ratified on 16 June 1780,[1] a little more than fourteen years before the first 10 amendments to the U.S. Constitution were ratified by Massachusetts and thirteen years before the decision in Chisholm, *infra*.

Never has article V been amended. Never has Massachusetts' article V been repealed. Never has the word "accountable" as used in article V been interpreted by a Massachusetts court. Not even in the impressive account of the history of sovereign immunity set out in Irwin v. Comm'r of Dept. of Youth Services, 388 Mass. 810, (1983) was article V cited.

Never has the Massachusetts Supreme Judicial Court analyzed the confluence of article V

---

[1] From the fifteenth-century English common law to Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682 (1949), and beyond, courts have never held that prohibited conduct can be shielded by sovereign immunity. That rule makes good sense -- since a principal cannot authorize unlawful conduct, such conduct is of necessity *ultra vires*. There is no reason to abandon such a well-settled and sensible rule.

Pennhurst State School and Hospital *et al* v. Halderman *et al*, 465 U.S. 89, 166 n. 51 (1984) (Stevens, Dissent). Although in the dissent, the facts are true.

> Throughout its history this Court has derived strength from institutional self-discipline. Adherence to settled doctrine is presumptively the correct course. Departures are, of course, occasionally required by changes in the fabric of our society. When a court, rather than a legislature, initiates such a departure, it has a special obligation to explain and to justify the new course on which it has embarked. Today, however, the Court casts aside well-settled respected doctrine that plainly commands affirmance of the Court of Appeals -- the doctrine of the law of the case, the doctrine of *stare decisis* (the Court repudiates at least 28 cases), the doctrine of sovereign immunity, the doctrine of pendent jurisdiction, and the doctrine of judicial restraint. No sound reason justifies the further prolongation of this litigation or this Court's voyage into the sea of undisciplined lawmaking.

PLAINTIFF'S MOTION TO RECONSIDER THE MATTERS
IN THE MEMORANDUM AND ORDER OF 26 MAY 2004,
AND VACATE THE DISMISSAL OF COUNTS 7-10

Case 1:03-cv-12314-WGY    Document 23    Filed 05/31/2004    Page 7 of 12

and the Eleventh Amendment to the United States Constitution. Never has the impact of the Eleventh Amendment of the United States Constitution on article V been considered and determined by a Massachusetts court.

Where the SJC chose not to adopt reasoning of the United States Supreme Court under the First Amendment in <u>Attorney General v. Desilets</u>, 418 Mass 316, 321 (1994), it is conceivable the court would choose not to adopt the reasoning of the Court as to the applicability of the Eleventh Amendment.

Between the Civil War and the enactment of the Massachusetts Tort Claims Act in 1978, the Commonwealth's **_common law_** sovereign immunity had been abrogated for nearly one century as to certain claims." <u>Irwin v. Commissioner of Dept. of Youth Services</u>, 388 Mass. at 813.

During the previous decade, the issue whether the Commonwealth should continue to claim sovereign immunity, the issue had come to a head. As a result, the Supreme Judicial Court of Massachusetts reviewed, in <u>Irwin</u>, *supra*, in excruciating detail the history of the Tort Claims Act after two "significant decisions of [that] court." <u>Id</u>. at 816. Those decisions were, in 1973, <u>Morash & Sons, Inc. v. Com.</u>, 363 Mass. 612, and four years later, <u>Whitney v. Worcester</u>, 373 Mass. 208 (1977).

In <u>Whitney</u>, the Court announced its intention to abrogate the sovereign immunity doctrine, retroactively to the date of the decision in <u>Morash</u>, should the Legislature have failed to act by the conclusion of its 1978 session. <u>Whitney</u>. So the Legislature effected some loosening of sovereign immunity in the Commonwealth.

In 1986, the SJC again declared its opposition to the doctrine: "[T]he doctrine of sovereign immunity is 'logically indefensible.'" <u>Hallett v. Town of Wrentham</u>, 398 Mass. 550, 558 (1986), quoting <u>Morash</u> at 618-619.

---

<u>Pennhurst</u> at 164-166 (Stevens, Dissent) (references to notes omitted).

7

PLAINTIFF'S MOTION TO RECONSIDER THE MATTERS
IN THE MEMORANDUM AND ORDER OF 26 MAY 2004,
AND VACATE THE DISMISSAL OF COUNTS 7-10

Case 1:03-cv-12314-WGY    Document 23    Filed 05/31/2004    Page 8 of 12

### The Confluence of the Eleventh Amendment and the Constitutionsl Convention

Every Massachusetts subject "ought to find a certain remedy, by having recourse to the laws." Mass. Const. Art. 11 (1780).

> Several colonial charters, including those of Massachusetts, ... expressly specified that the corporation body established thereunder could sue and be sued.... If a colonial lawyer had looked into Blackstone for the theory of sovereign immunity, as indeed many did, he would have found nothing clearly suggesting that Colonies as such enjoyed any immunity from suit.

<u>Alden v. Maine</u>, 527 U.S. 706, 119 S.Ct. 2240, 2271 (1999).

> Manifestly, we cannot . . . assume that the letter of the Eleventh Amendment exhausts the restrictions upon suits against non-consenting States. Behind the words of the constitutional provisions are postulates which limit and control. . . . There is also the postulate that States of the Union, . . . shall be immune from suits, without their consent, **save where there has been "a surrender of this immunity in the plan of the convention."** 292 U.S., at 322-323, 54 S.Ct. 745 (quoting The Federalist No. 81) (footnote omitted).

<u>Alden</u>, 119 S.Ct. at 2254 (emphasis supplied).

That surrender and consent to suit by its citizens *was* the plan of the Massachusetts convention.[2] *See also* Federalist Paper No. 80 ( McLean's ed., June 21, 1788, New York) (Hamilton). With accountability having been mandated at the convention, any claim today by Massachusetts or its branches of government to sovereign or absolute or judicial immunity is misleading, if not unlawful.[3]

To waive that constitutional mandate for accountability in Massachusetts, the procedures for an initiative petition, described in the duly ratified Article LXXIV of the Articles of Amendment to the Massachusetts Constitution, must be followed. Those procedures have never been in-

---

[2] John Adams, one of a committee of 30, drafted "'a Declaration of Rights, and the Form of a Constitution,' to be laid before the Convention at its second session (Mass. Constitutional Convention, 1779-1780), Jour., p. 26)." The adopted instrument "is still in force today as the organic law of the Commonwealth of Massachusetts." L. H. Butterfield, ed., *The Adams Paper: Diary and Autobiography of John Adams*, vol. 2, p. 401 n. 1 (Cambridge, Mass. Belknap Press of Harvard University, 1962).

[3] The MTCA, G.L. c. 258, enacted in 1978, implies that sovereign immunity exists in Massachusetts with certain exceptions set out in that statute -- meaning that the Commonwealth has agreed to waive its sovereign immunity and consent to be sued for certain causes of action. That the MTCA violates article V -- and has yet to be deemed unconstitutional -- appears to have escaped challenge. For the MTCA to be "constitutional," article V would have had to

PLAINTIFF'S MOTION TO RECONSIDER THE MATTERS
IN THE MEMORANDUM AND ORDER OF 26 MAY 2004,
AND VACATE THE DISMISSAL OF COUNTS 7-10

Case 1:03-cv-12314-WGY   Document 23   Filed 05/31/2004   Page 9 of 12

voked vis-à-vis article V, leaving in effect the unequivocal mandate by the forefathers of Massachusetts memorialized in article V of the Declaration of Rights of the Constitution of the Commonwealth of Massachusetts**:** to wit, the mandate that all three branches of government *at all times* must be accountable to the people.  **Thus the State's waiver of the ancient common-law doctrine of sovereign immunity has long been effectuated**.

6. Moreover, Johnson makes no allegations of conduct of these defendants outside their roles as adjudicators of her case.   [Mem-Order, at 20].

**As to Herbert Phillips:** Johnson incorporates herein by reference in entirety pages 9-10 of her brief on quasi-judicial and quasi-prosecutorial conduct.  There she discusses the absence of independence of Phillips' judgment; he was continually guided by the advice of BBO Carol Wagner, who was not appointed in accordance with the Board Rules to act in any adjudicatory capacity.  Phillips himself was appointed as set forth in the box below.

> "Defendant Herbert P. Phillips was appointed, purportedly pursuant to Board Rule 3.19(a), as the special hearing officer ["SHO"] on Crane's disciplinary action against Johnson**."** [Johnson's brief, at 9]. "Phillips was to report promptly to the **Board** his findings, conclusions, and ***recommendations***, together with a record of the proceedings before him [Board Rule 3.46]." [Johnson's brief, at 7 *(Emphasis supplied)*].

**As to M. Ellen Carpenter:** When Carpenter decided nondispositive motions, she was acting *outside* her role under the Board' own rules.  Her decisions regarding preclusion of evidence were malevolent and violated Johnson's constitutional rights to due process and equal protection.

> ". . . In actual fact, Defendant Carpenter was, at most, but a "**shadow judge**": Carpenter was ***not appointed*** pursuant to Board Rule 3.19(a) as a member of a hearing panel or as a special hearing officer. . . . Carpenter had under the Board Rules authority to decide only dispositive motions brought by a defending attorney [Compl. ¶80].   Even then, Carpenter never having allowed oral argument on any motion that she was to decide, she never met Johnson.  In fact, she and Johnson were never in a room alone or with others present." [Johnson's brief, at 6 *(Emphasis supplied)*].

**As to Daniel Crane:** Johnson incorporates herein by reference in entirety pages 5-13 of

---

be repealed or amended before the MTCA was passed.

PLAINTIFF'S MOTION TO RECONSIDER THE MATTERS
IN THE MEMORANDUM AND ORDER OF 26 MAY 2004,
AND VACATE THE DISMISSAL OF COUNTS 7-10

Case 1:03-cv-12914-WGY    Document 23    Filed 05/31/2004    Page 10 of 12

her brief on quasi-judicial and quasi-prosecutorial conduct.

> "In the BBO action, Crane was the titular plaintiff and titular quasi-prosecuting attorney." [Johnson's brief, at 31].
>
> ———————————
>
> . . . the nature of Crane's prosecutorial activity in the State Bar case has been strictly ministerial. If it were administrative and closely associated with the trial process, his conduct might warrant, at most, qualified immunity. <u>Imbler v. Pachtman</u>, 424 U.S. 409, 430 (1976) (certain administrative or investigative conduct might warrant only qualified immunity)." [Johnson's brief, at 11].
>
> ———————————
>
> . . . His role as titular plaintiff in the disciplinary action appears to be, at most, ministerial in nature. A ministerial role does not suffice to trigger protection under the umbrella of generic immunity. <u>Breault v. Chairman of the Bd. of Fire Commrs. of Springfield</u>, 401 Mass. 26, 38 (1987), *cert. denied sub nom.* <u>Forastiere v. Breault</u>, 485 U.S. 906 (1988) (holding, "where intentional ministerial acts of public officials are involved, there is no basis to conclude, under the relevant statutes and case law, that immunity from suit should be granted").
>
> > The doctrine of qualified immunity shields public officials who are performing discretionary functions, **not ministerial in nature**, from civil liability in §1983 actions if at the time of the performance of the discretionary act, the constitutional or statutory right allegedly infringed was not "clearly established."
>
> <u>Laubinger v. Department of Rev</u>., 41 Mass.App.Ct. 598, 603 (1996), quoting from <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982) (emphasis supplied). [Johnson's brief, at 12].

> 7.      Like adjudicators, prosecutors enjoy absolute immunity against damages actions under Section 1983 for activities in their quasijudicial capacity, and "[s]tate officials performing prosecutorial functions -- including their decisions to initiate administrative proceedings aimed at legal sanctions -- are entitled to absolute immunity as well." Crane is, therefore, entitled to absolute immunity based on his role as prosecutor in the Board of Bar Overseers action against Johnson. [Mem-Order, at 20] (internal citations omitted)].

There is no evidence whatsoever regarding Crane's function other than that he served as titular Plaintiff, and thus was not entitled to immunity of any kind.

Even were we to assume *arguendo* that Crane had some unidentified role as a prosecutor, he never made an appearance at a hearing, making it reasonable to conclude that Crane's activities were not "intimately associated with the judicial phase" of the prosecution, they were at most administrative, possibly making only qualified immunity appropriate.

PLAINTIFF'S MOTION TO RECONSIDER THE MATTERS
IN THE MEMORANDUM AND ORDER OF 26 MAY 2004,
AND VACATE THE DISMISSAL OF COUNTS 7-10

Case 1:03-cv-12514-WGY    Document 23    Filed 05/31/2004    Page 11 of 12

> … Out of concern for the integrity of the judicial system, the Supreme Court in <u>Imbler</u> thus extended absolute immunity to those prosecutorial activities "intimately associated with the judicial phase of the criminal process," such as initiating a prosecution or presenting the State's case. [<u>Imbler</u>], at 430, 96 S.Ct. at 994. It specifically left unanswered the question whether prosecutorial activity which is not closely associated with the trial process, **such as certain administrative or investigative conduct**, might warrant only a qualified immunity.
>
> <u>Chicopee Lions Club v. District Atty. for Hampden Dist.</u>, 396 Mass. 244, 248 (1985) (emphasis supplied).

> We have recognized that state supreme courts may act in a non-judicial capacity in promulgating rules regulating the bar. . . . Challenges to the constitutionality of state bar rules, therefore, do not necessarily require a United States District Court to review a final state court judgment in a judicial proceeding. Instead, **the District Court may simply be asked to assess the validity of a rule promulgated in a non-judicial proceeding. If this is the case, the District Court is not reviewing a state court judicial decision.** In this regard, 28 U.S.C. § 1257 does not act as a bar to the District Court's consideration of the case and because the proceedings giving rise to the rule are non-judicial the policies prohibiting United States District Court review of final state court judgments are not implicated. **United States District Courts, therefore, have subject matter jurisdiction over general challenges to state bar rules, promulgated by state courts in non-judicial proceedings, which do not require review of a final state court judgment in a particular case.** They do not have jurisdiction, however, over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional. Review of those decisions may be had only in this Court. 28 U.S.C. § 1257.
>
> <u>Catz v. Chalker</u>, 142 F.3d at 293-294, quoting <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 485-486 (1983). [Johnson's Mot. to Reconsider Dismissal of counts 1-6].

WHEREFORE, Plaintiff prays this court allow this motion to reconsider the matters in the Memorandum and Order of 26 May 2004, including dismissal of Counts 7-10.

                                                Respectfully submitted,
                                                Plaintiff Barbara C. Johnson, pro se,

                                                /s/ Barbara C. Johnson  &lt;barbaracjohnson@worldnet.att.net&gt;
31 May 2004                              Barbara C. Johnson, Esq., Pro Se
                                                6 Appletree Lane
                                                Andover, MA 01810-4102
                                                978-474-0833
                                                BBO #549972

PLAINTIFF'S MOTION TO RECONSIDER THE MATTERS
IN THE MEMORANDUM AND ORDER OF 26 MAY 2004,
AND VACATE THE DISMISSAL OF COUNTS 7-10

Case 1:03-cv-12914-WGY   Document 23   Filed 05/31/2004   Page 12 of 12

## AFFIDAVIT OF BARBARA C. JOHNSON

I, Barbara C. Johnson, hereby swear and say that all the statements and observations I attribute to myself in the within pleading are true and accurate. Sworn under the pains and penalties of perjury.

                                                /s/ Barbara C. Johnson   <barbaracjohnson@worldnet.att.net>
31 May 2004                                 Barbara C. Johnson, Esq., Pro Se

## PLAINTIFF'S CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2)

I, Barbara C. Johnson, hereby certify, pursuant to Local Rule 7.1(A)(2), that I did not attempt to confer with AAG John Hitt in a good faith attempt to resolve or narrow the issues raised by the instant motion, because on Friday I was scheduled to be in a Maine court and I finished this document during the weekend, and he was not in his office over the weekend.

                                                /s/ Barbara C. Johnson   <barbaracjohnson@worldnet.att.net>
31 May 2004                                 Barbara C. Johnson, Esq.
                                                            6 Appletree Lane
                                                            Andover, MA 01810-4102
                                                            978-474-0833
                                                            BBO #549972